## STANOLIND OIL & GAS CO. v. KIMMEL et al.
### No. 891.

Circuit Court of Appeals, Tenth Circuit.
Jan. 8, 1934.

Ray S. Fellows, of Tulsa, Okl. (Joseph A. Gill, Jr., of Tulsa, Okl., on the brief), for appellant.

Lawrence Mills, of Tulsa, Okl. (G. Earl Shaffer, of Tulsa, Okl., on the brief), for appellees.

Before PHILLIPS and BRATTON, Circuit Judges, and SYMES, District Judge.

SYMES, District Judge.

The appellees, J. D. Kimmel, J. W. Cree, R. M. Gawthrop, and W. D. Goodwin, brought an action at law against the appellant, defendant below, in the district court of Tulsa county, Okl., to recover damages for an alleged breach of an oil and gas lease development contract. The case was removed to the United States District Court for the Northern District of Oklahoma, tried to a jury, and judgment rendered in favor of plaintiffs for $28,000. Defendant appeals.

On April 3, 1922, the plaintiffs were the owners by assignment to Kimmel, for the joint and equal use and benefit of the plaintiffs, of two certain departmental oil and gas leases, one known as the David Wind lease of 120 acres, and the other as the Malinda Knight lease of 80 acres, both in the Garrison Pool in the Creek Nation, Okl.

On that date said Kimmel, acting for himself and the other plaintiffs, entered into a written contract with the McMan Oil & Gas Company, whereby the plaintiffs in consideration of $50,000, and other consideration, assigned to the said McMan Oil & Gas Company an undivided one-half interest in said leases, together with the exclusive control and management thereof, and the McMan Company agreed that it should properly develop said leases for oil or gas, by the drilling and equipping of the necessary wells to produce the oil or gas under said leases, and to advance all moneys necessary for the proper development thereof, up to $200,000, and should be reimbursed therefor by plaintiffs' proportion of the oil and gas produced, until the cost of development was paid.

Later the McMan Oil & Gas Company was absorbed by the defendant, Stanolind Oil & Gas Company, a Delaware corporation, which took over the leases in question, and assumed all the obligations and liabilities thereof. The action is for damages for failure to properly develop said leases in accordance with the said contract.

The execution and assignment of the contract, and its assumption of the liabilities of the McMan Company is admitted by defendant. It then alleges that it drilled two oil wells and one gas well at a cost of $123,417.40, exclusive of the cash payment of $50,000;

that the total receipts from them amounted to $73,618.14, thus resulting in a loss of $49,-799.26; that the development by other lessees of contiguous lands had been unprofitable, and that competent geologists and men of experience in this field had conducted detailed study of relevant factors in respect to further developments of the leases. That predicated thereon, the McMan Company had concluded that no prudent, skillful, or experienced operator would further develop said leases; that further development would not be advantageous to the plaintiffs, and would only result in greater financial loss to the defendant.

Defendant first demurred to the plaintiff's evidence, and then moved for an instructed verdict at the close of all the evidence. Both were overruled and exceptions saved.

The assignments of error chiefly relied upon are based upon these rulings of the court, and present for our consideration the law defining the defendant's duty to the plaintiffs under the terms of the contract and the transcript of the evidence to determine whether it supports the verdict rendered.

The law governing oil and gas leases of this nature is well settled. The provision that the lessee "shall advance any and all moneys necessary for the proper development of the above described properties," to the extent of $200,000, is a usual one, and held to be an implied covenant to diligently develop the property for oil or gas. This has been the law since Brewster v. Lanyon Zinc Co. (C. C. A. 8th, 1905) 140 F. 801, page 814, wherein Judge Van Devanter said:

"No breach can occur save where the absence of such diligence is both certain and substantial in view of the actual circumstances at the time, as distinguished from mere expectations on the part of the lessor and conjecture on the part of mining enthusiasts. The large expense incident to the work of exploration and development, and the fact that the lessee must bear the loss if the operations are not successful, require that he proceed with due regard to his own interests, as well as those of the lessor. No obligation rests on him to carry the operations beyond the point where they will be profitable to him, even if some benefit to the lessor will result from them. It is only to the end that the oil and gas shall be extracted with benefit or profit to both that reasonable diligence is required. Whether or not in any particular instance such diligence is exercised depends upon a variety of circumstances, such as the quantity of oil and gas capable of being produced from

the premises, as indicated by prior exploration and development, the local market or demand therefor or the means of transporting them to market, the extent and results of the operations, if any, on adjacent lands, the character of the natural reservoir—whether such as to permit the drainage of a large area by each well—and the usages of the business. Whatever, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interests of ·both lessor and lessee, is what is required."

The late Judge Kenyon in Watchorn v. Roxana Petroleum Corporation (C. C. A.) 5 F. (2d) 636, collected and reviewed all the pertinent authorities and approved the statement from Brewster v. Lanyon Zinc Co., supra. It has been adopted as the law in the Tenth Circuit in Orr v. Comar Oil Company, 46 F. (2d) 59, and in Denker v. Mid-Continent Petroleum Corp., 56 F. (2d) 725. In the latter case Judge Phillips, discussing these implied covenants, said, page 727 of 56 F. (2d):

"A lessee must do that which, under the circumstances, an operator of ordinary prudence, having regard to the interests of both lessor and lessee, would do."

We deem it unnecessary to review the evidence in detail. In our opinion there was sufficient produced pro and con to make the case one for the jury. . The plaintiffs made a prima facie case that three of the tracts, at least, were in proven gas fields, and that at the times in question the gas produced therefrom could have been sold at a profit equal, at least, to the amount of the verdict of the jury.

■ Appellant's argument and discussion of the evidence is really directed to the point that its evidence outweighed that of the plaintiffs; that some· of plaintiffs' witnesses were theorists, when contrasted with the experienced operators it called to the stand, etc. Arguments of this nature are for the jury and not an appellate court. Nor can we agree with counsel that Judge Van Devanter in referring to "mining enthusiasts" (supra), intended to include capable geologists as a class, to the exclusion of so-called practical or actual operators. It is the province of the jury, and not the court, to weigh the evidence, and, where there is a conflict, decide that which it would believe, and give such credence to the so-called theorists or experts, as in its judgment it deems fair and just. This applies with peculiar force to a situation such as we have here.

■ The authorities (supra), require the ju-

ry, in deciding whether in a particular case a lessee had done what a prudent operator would do, to consider such factors, among others, as the quantity of oil and gas capable of being produced, the market, means of transportation, extent and results of operations on adjoining lands, character of the natural reservoir, costs, etc.—all questions of fact—and on each of which a quantum of evidence was offered by each side.

■■ It is true that in a jury case the evidence must be of such a character as to justify the verdict. A verdict cannot rest on evidence that requires the jury to guess, speculate, or select one of several possibilities. But in· controversies of this nature the evidence necessarily leaves much to· be desired. The oil industry is not an exact science,· and whether or not in a particular situation additional wells should be drilled, or what results would follow if drilled, is at the best a matter of opinion. So we are relegated to, and must rely to some extent, at least, upon the judgment of experienced and practical operators and qualified geological experts alike; and where the evidence produced is the best available, relief cannot be denied simply because it is not as exact as the court might wish for. Parties to contracts of this nature are charged with knowledge of their uncertainties and speculative character.

■ In Hoffer Oil Corporation v. Carpenter (C. C. A. 10th) 34 F. (2d) 589, page 592, this court said:

"A person who has violated his contract will not be permitted to reap advantage from his own wrong, by insisting upon proof which, by reason of his breach, cannot be furnished. * * *

"A party, who has broken his contract, will not be permitted to escape liability because of the lack of a perfect measure of the damages caused by his breach. * * *

"A reasonable basis for computation, and the best evidence which is obtainable under the circumstances of the case and which will enable the jury to arrive at an approximate estimate of the loss, is sufficient. * * * In such a case, the amount may be fixed by the jury, in the exercise of sound discretion, under proper instructions from the court."

And that court quotes with approval the following from Manss-Owens Co. v. H. S. Owens & Son, 129 Va. 183, 105 S. E. 543:

"Nearly all commercial contracts are entered into in contemplation of future profits. As such profits are prospective, they must be

uncertain and problematical; but the person injured is not to be deprived of all remedy."

See, also, F. W. Woolworth Co. v. Davis (C. C. A. 10th) 41 F.(2d) 342; Larabee Flour Mills Co. v. Carignano (C. C. A. 10th) 49 F.(2d) 151.

We think the testimony of the plaintiffs' witnesses, considered as a whole, justified the jury in believing, as they evidently did, that proper development required the drilling of additional wells, before it could be said that the defendant had done all that a prudent, skillful, and experienced operator should do, considering the relationship of the parties to each other and the circumstances involved.

■ The defendant's demurrer and motion referred to raised the question of the sufficiency of the plaintiffs' evidence as a matter of law, and for the purposes thereof, conceded that the plaintiffs' witnesses were worthy of credit; that the facts testified to were true.

"A motion for an instructed verdict, upon an insufficiency in law of the evidence, presupposes that the witnesses testifying to the facts adduced to make a case for the party against whom the motion is made are worthy of credit. It is as if the party making the motion had demurred to the evidence and is equivalent to saying: 'We concede the truth of the facts which are relied upon to make a case for the plaintiff, or a defense for the defendant; but they are insufficient in law to support a verdict, which must be founded upon such facts.'" Rochford v. Pennsylvania Co. (C. C. A. 6th) 174 F. 81, at page 83.

"On the other hand, the case should be left to the jury unless the conclusion follows, as matter of law, that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish." Louisville & Nashville R. Co. v. Woodson, 134 U. S. 614, at page 621, 10 S. Ct. 628, 630, 33 L. Ed. 1032—the leading case.

See, also, the earlier cases, Schuchardt v. Allen, 1 Wall. 359, at page 370, 17 L. Ed. 642, Parks v. Ross, 11 How. 362, at page 373, 13 L. Ed. 730, and Pleasants v. Fant, 22 Wall. 116, at page 121, 22 L. Ed. 780.

The objection that the court improperly insisted upon a verdict after the jury had been out for some time is not properly presented, and we are not required to notice it (rule 11). Nevertheless, we have examined the question on its merits, and are of the opinion the court properly exercised the discretion vested in it in such matters.

Finding no error in the record, the judgment is accordingly affirmed.