PETERSEN, Respondent, vs. PILGRIM VILLAGE, Appellant.

*March 8—April 5, 1950.*

For the appellant there was a brief by *Roberts, Roe & Boardman,* attorneys, and *Walter M. Bjork* of counsel, all of Madison, and oral argument by *Mr. Bjork.*

For the respondent there was a brief by *Ela, Christianson & Ela* of Madison, and oral argument by *Walter P. Ela* and *Emerson Ela.*

FRITZ, C. J.   On this appeal the defendant states that it is concerned with solely the adjudication that plaintiff is entitled to recover $8,000 on his fourth cause of action. As his first cause of action plaintiff alleged that he was in the employ of defendant as superintendent of its construction of houses and in charge of the maintenance and operation of its enterprise during 1947 until September 1, 1947; that for his services defendant agreed to pay him a salary of $4,600 per year, making $3,066.67 due to him for eight months of 1947, and that he was paid $2,400, leaving $666.67 due to him for such services; and the jury assessed plaintiff's damages at $666.67 on the first cause of action. Defendant does not appeal from the judgment in this respect.

As his fourth cause of action plaintiff alleged:

He entered the employ of defendant about ten years ago, and it agreed with plaintiff that he would share in the profits of the corporation, and in reliance thereon he took charge of all building construction for defendant, and all maintenance of its enterprises throughout the term of his employment, and continued in the employment of defendant throughout the said term of years, and was repeatedly promised that he

would be paid for such services, in addition to his regular stated salary, a share in the profits of the corporation; and that he believes defendant has made profits of at least $200,000, and the reasonable amount of his share of such profits is at least ten per cent thereof, or $20,000, and no part thereof has been paid.

In relation to that cause of action defendant, at the commencement of the trial, entered a demurrer *ore tenus,* which the court overruled; and subsequently defendant moved for nonsuit and finally for a directed verdict on the ground that the fourth cause of action failed to allege, and the evidence on the trial failed to establish, facts sufficient to constitute a legal cause of action. Defendant's motions were denied by the court.

Defendant's demurrer *ore tenus,* and its subsequent motions for a nonsuit and a directed verdict, were based on the ground that plaintiff's allegations in his fourth cause of action and likewise the evidence, which the court permitted plaintiff to introduce over defendant's objections, that defendant had agreed with the plaintiff that he "would share in the profits of the corporation," and that defendant promised that plaintiff "would be paid for such services, in addition to his regular stated salary, a share in the profits of the corporation," were too indefinite to establish a valid and enforceable contractual obligation. No sufficiently definite basis for the recovery of any sum of money by plaintiff was established by his testimony that,—

Defendant's officer and manager, Willis E. Gifford, stated to plaintiff, that he was to receive a share of the profits that Mr. Gifford had promised him through those years, which he had promised plaintiff from the start of his service. In other words, Mr. Gifford promised that he was to receive some share of the profits from the sale of the houses in Pilgrim Village plat when they were disposed of. That was to be in addition to his monthly or yearly salary. That promise was made to him constantly from the time he started

work until the time he left. He stayed working with defendant under these promises of a share in the profits. Mr. Gifford would say, "you know when these houses are sold and we show a profit in Pilgrim Village, that you will get your share." The profits he referred to and told plaintiff that he would share in were the profits of Pilgrim Village to be realized from the sales of the fifty-six houses built. He asked Mr. Gifford (in August, 1947) about his promises that he had given plaintiff for so many years about sharing in the profits, and he said that he could not give it to him in cash. There was no way of determining what those profits would be or any discussion as to how those profits would be determined. There was no discussion between Mr. Gifford and himself as to any percentage of this profit and they never came to any definite agreement as to what that percentage of profits would be either orally or in writing at the time plaintiff agreed to come to Madison.

As stated in Restatement, 1 Contracts, p. 40, sec. 32,—

"An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain.
"*Comment:*
"*a*. Inasmuch as the law of contracts deals only with duties defined by the expressions of the parties, the rule stated in the section is one of necessity as well as of law. The law cannot subject a person to a contractual duty or give another a contractual right unless the character thereof is fixed by the agreement of the parties. A statement by A that he will pay B what A chooses is no promise. A promise by A to give B employment is not wholly illusory, but if neither the character of the employment nor the compensation therefor is stated, the promise is so indefinite that the law cannot enforce it, even if consideration is given for it.
"*b*. Promises may be indefinite in time or in place, or in the work or things to be given in exchange for the promise. In dealing with such cases the law endeavors to give a sufficiently clear meaning to offers and promises where the parties intended to enter into a bargain, but in some cases this is impossible."

As stated in 12 Am. Jur., Contracts, p. 561, sec. 70,—

"The general rule is that price is an essential ingredient of every contract for the transfer of property or rights therein or for the rendering of services. Accordingly, an agreement must be definite as to compensation. In order that an executory agreement may be valid, it is generally necessary that the price must be certain or capable of being ascertained from the agreement itself. By this is not meant that the exact amount in figures must be stated in the agreement; however, where that is not the case, the price must, by the terms of the agreement, be capable of being definitely ascertained. An agreement leaving the price for future determination is not binding. . . . [p. 562.] Although there is some authority to the contrary, a promise to pay a reasonable sum for goods or services is generally held valid. . . . On the other hand, a promise to pay a fair share of profits has been held too indefinite to be valid." *Varney v. Ditmars,* 217 N. Y. 223, 111 N. E. 822, Ann. Cas. 1916B 758.

In *Varney v. Ditmars, supra,* the employer promised to pay plaintiff $40 a week and "the first of January next year I will close my books and give you a fair share of my profits." The court said (p. 227) :

"The statement alleged to have been made by the defendant about giving the plaintiff and said designer a fair share of his profits is vague, indefinite, and uncertain and the amount cannot be computed from anything that was said by the parties or by reference to any document, paper, or other transaction. The minds of the parties never met upon any particular share of the defendant's profits to be given the employees or upon any plan by which such share could be computed or determined. The contract so far as it related to the special promise or inducement was never consummated. It was left subject to the will of the defendant or for further negotiation. It is urged that the defendant by the use of the word 'fair' in referring to a share of his profits, was as certain and definite as people are in the purchase and sale of a chattel when the price is not expressly agreed upon, and that if the agreement in question is declared to be too indefinite and uncertain to be enforced, a similar conclusion must be reached in every case

where a chattel is sold without expressly fixing the price therefor.

"The question whether the words 'fair' and 'reasonable' have a definite and enforceable meaning when used in business transactions is dependent upon the intention of the parties in the use of such words and upon the subject matter to which they refer. In cases of merchandising and in the purchase and sale of chattels the parties may use the words 'fair and reasonable value' as synonymous with 'market value.' . . .

"The contract in question, so far as it relates to a share of the defendant's profits, is not only uncertain but it is necessarily affected by so many other facts that are in themselves indefinite and uncertain that the intention of the parties is pure conjecture. . . . The courts cannot aid parties in such a case when they are unable or unwilling to agree upon the terms of their own proposed contract."

To the same effect see: *Hubbard v. Turner Dept. Store,* 220 Mo. App. 95, 278 S. W. 1060; *Crowell v. Houde Engineering Corp.* (Mo. App.), 19 S. W. (2d) 516; *Donovan v. Bull Mountain Trading Co.* 60 Mont. 87, 198 Pac. 436; *McDonald v. Acker, Merrall & Condit Co.* 192 App. Div. 123, 182 N. Y. Supp. 607; *Butler v. Kemmerer,* 218 Pa. 242, 67 Atl. 332; *Mackintosh v. Kimball,* 101 App. Div. 494, 92 N. Y. Supp. 132; *Ratcliff v. Aspros,* 254 Wis. 126, 129, 35 N. W. (2d) 217; *Factor v. Peabody Tailoring System,* 177 Wis. 238, 187 N. W. 984; *Kollock v. Scribner,* 98 Wis. 104, 109, 73 N. W. 776.

Consequently, as at the conclusion of the trial the evidence in respect to plaintiff's damages on the fourth cause of action was merely that he was to be paid "some share of the profits," and as the parties never came to any definite agreement as to what that percentage of the profits was to be, the court erred in denying defendant's motion for a directed verdict, because at that time there had been no application for leave to amend the complaint. Instead the court, on plaintiff's motion for leave to amend his complaint, allowed him to add an allega-

tion that "a reasonable value of the services of the plaintiff rendered to the defendant corporation from May 28, 1942, through August 31, 1947, in addition to the payments made to the plaintiff in the form of cash and notes, is at least $10,000." As there was no evidence whatever of any promise or agreement by defendant to pay plaintiff "a reasonable value" of additional services rendered by him, there was no basis for granting plaintiff's motion for leave to amend his complaint in that respect; and likewise there was no basis or occasion for the court's instruction to the jury that,—

"Your duty is to determine the amount of the reasonable value of the services, and in making that determination you should give consideration to all credible evidence introduced. . . . In determining whether the reasonable value of those services is greater than the amount the plaintiff has been paid for those services by defendant corporation, and if you determine that they are worth more than has been paid, then in determining the amount that they are worth more than has been paid you are entitled to consider as admissions on those matters by the defendant corporation any promises made by Willis E. Gifford that the plaintiff should share in the profits of the corporation in addition to his salary, and also any statements by Mr. Gifford as to what was a fair amount of the profits to be paid to the plaintiff."

In view of the court's errors in the respects stated above, the judgment under review for $9,066.67 as damages cannot be affirmed, because there is erroneously included therein the sum of $8,000 assessed as damages on the fourth cause of action. However, as it appears from the record that there has not been duly tried the real controversy as to whether plaintiff is entitled to payment for said additional services and, if so, as to the reasonable value thereof, the judgment is reversed in the exercise of the court's discretion, under sec. 251.09, Stats., and the cause remitted to the trial court for a new trial.

**628**

*By the Court.*—Judgment reversed and cause remanded with directions for further proceedings in accordance with the opinion.

BROWN, J., took no part.