**MARYLAND CASUALTY COMPANY,**
Appellant,

v.

**CLEAN–RITE MAINTENANCE CO.,**
Appellee.

**No. 21015.**

United States Court of Appeals
Ninth Circuit.

June 23, 1967.

James H. Bruce, James F. Spiekerman, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for appellant.

Gerald Pullen, Hershiser, Canning, Pullen, Mitchell & Rawls, Krause, Lindsay & Nahstoll, Portland, Or., for appellee.

Before HAMLEY, DUNIWAY and ELY, Circuit Judges.

ELY, Circuit Judge:

Appellee is an Oregon corporation engaged in the business of building maintenance. Acting through its president, one Hill, it entered into a contract with the owners and operators of the Postal Building in Portland, represented by Mrs. Relos, to clean the windows of that building. In performing the work, one of appellee's employees fell and was severely injured. Alleging that the accident was caused by the defective nature of the building's window frames and that the building owners had been negligent in permitting the defective condition to exist, as well as in failing to warn of its existence, the injured employee sued the owners for damages in an Oregon state court. Appellant, a Maryland corporation and the owners' public liability insurance carrier, undertook defense of the action and ultimately settled it for $22,-500.

Claiming to be subrogated to rights of the building owners, appellant then sought to recover its loss by the present action in the United States District Court, 28 U.S.C. § 1332. It alleged that the appellee had breached an oral contract with the owners "to provide insurance protection" which would have indemnified the building owners against "any and all claims of any kind and nature arising out of the window washing operations," including the claim of the injured employee.

Following the presentation of evidence, the district judge granted appellee's motion for a directed verdict, holding that, even if the conversations relied upon by appellant occurred, as the owners' agent testified, the terms of the alleged contract were so indefinite that they could not constitute an enforceable contract to procure insurance. We affirm.

The District Court correctly undertook to apply Oregon law, and appellant's principal contention is that the court erroneously applied to this case, involving an alleged *contract to procure insurance*, the standards of proof which, in Oregon, relate to a *contract of insurance*. We are referred to Hamacher v. Tumy et al., 222 Or. 341, 352 P.2d 493 (1960), wherein the Supreme Court of Oregon held that the elements of a contract *of an insurance broker* to procure insurance need not be proved with the exactitude which is required to establish a contract of insurance. Because the broker holds himself out as an expert in the field, said the Oregon court, a contract to procure insurance may arise even though it remains to the broker to ascertain some of the facts essential to creation of the ultimate contract of insurance. The decision is not controlling here, for the appellee is not an insurance broker, nor was it alleged or shown that its representatives were held out as possessing any particular expertise in the insurance field. Moreover, *Hamacher* specifically recognizes the applicability to alleged *contracts to procure insurance* of the "elementary legal proposition that a contract will not arise until there is

sufficient certainty in the proof of its terms." 352 P.2d at 497. "Obviously, liability for failure to procure insurance could not arise unless the agent had sufficiently definite directions from his principal to enable him to consummate the final insurance contract." Ibid.

■ Even if the language allegedly used by Hill in the negotiations with Mrs. Relos could be construed as words of promise to procure insurance, we must agree with the district judge that there was no promise of reasonable certainty. The only real thrust of any promise, as such can be seen from the testimony of Mrs. Relos, is that the insurance coverage provided by Clean-Rite was "extra heavy" or "complete." These descriptions are so vague that only speculation could support a determination of the precise terms and extent of that coverage and resolution of the question of whether or not it would afford indemnity against many different types of loss, including that which was sustained here.[1]    We

---

1. It is clear that Mrs. Relos herself was originally in doubt as to the import of the statements which, in subsequent testimony, she attributed to Hill. Under date of August 29, 1963, she wrote a letter to Hill and remarked, "It occurs to me now in view of your earlier comments about insurance that the Postal Building *might be* covered for this claim under your insurance policies." (Emphasis supplied.)

The only testimony claimed to support appellant's case, as emphasized in its brief, is that given by the owners' agent as follows:

"Well, I called him and he came down to the office, and we were discussing doing the window washing at the building, and I told him that—I asked him what type of coverage *he carried*, because we wanted complete coverage in everything.

"And he went on to tell me, particularly I do remember about the conversation that *he carried* extra insurance with the Zurich Company, and that is why he had to charge a bit more for— on the regular rate. Most of the window washers have about the same rate for the size of the building. I think they do it on account of the windows. At any rate, his fee was more, and I asked him why, and he said because *he carried* such extra heavy insurance to cover us in any circumstances which might arise.

*     *     *     *     *     *

"And he said, 'For the insurance that *I carry*, you would be covered for any type of situation that might arise.'

"And this is what impressed me.

*     *     *     *     *     *

Q  "What is that you are looking at?
A  "Well, it is a large ad in the advertising, Clean-Rite Maintenance, and goes on to say what they do, and fully insured for your protection.
Q  "Did you read that?

A  "Yes, I did.

*     *     *     *     *

"He said that the one reason that his charge was more was because he had to pay extra for such heavy insurance to protect the people that he worked for.

*     *     *     *     *

"He said that we would be completely covered if anything arose that was wrong that would hurt us; anything wrong he would have the complete insurance coverage, and that is all I was interested in.

*     *     *     *     *     *

"He told me that *he carried* a type of bond. Now—a type of bond, and *he carried* this Zurich, with the Zurich Company, and he told me that it just covered extra insurance.

"And I asked him, 'Why do you charge more than—' most window washing companies charge about the same. And he said because of the extra coverage *he carried*, and that is why he had to charge more, but in turn the people that had his services were covered more." (Emphasis supplied.)

In the foregoing, we see that the statements attributed to Hill hardly constituted promises to procure insurance, and they cannot be construed as an agreement by appellee to indemnify the owners for losses resulting from the negligence of the owners themselves. They were, more accurately, representations as to insurance already in force.

Even if the suit had been predicated upon allegations of fraudulent misrepresentation, as it was not, there was no showing that the insurance carried by appellee was not "extra heavy" as compared with insurance customarily carried by firms engaged in the building maintenance business. The appellee was, in fact, insured for "all sums which the insured shall become legally obligated to pay as damages" for bodily injury or property

therefore hold that the alleged contract is, for lack of certainty in its terms, unenforceable, and that the district judge properly granted the appellee's motion for a directed verdict.[2]

Affirmed.

damage under a "comprehensive liability policy" issued by Zurich Insurance Company for a period including the time when the accident occurred.

2. Because of this conclusion, it is unnecessary for us, as it was apparently also believed unnecessary by the District Court, to consider appellee's contention that appellant, in the circumstances, was not entitled to the asserted right of subrogation.