**G. D. DOUGLASS et al., Appellants,**

**v.**

**PANAMA, INC., et al., Appellees.**

**No. 659.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

July 19, 1972.

Rehearing Denied Sept. 13, 1972.

John P. Spiller, Spiller & Spiller, Charles L. Black Aycock, Houston, for appellants.

M. W. Parse, Jr., Fulbright, Crooker & Jaworski, Houston, for appellees.

BARRON, Justice.

This is a suit filed by G. D. Douglass and thirteen other former employees of Panama, Inc. as plaintiffs, against Panama, Inc. and its parent company, Associated Oil and Gas Company, both corporations, seeking recovery for certain bonuses, sick leave and vacation pay which the plaintiffs allege they had been promised and should be paid for the year 1965. It is alleged that the benefits above were promised by M. E. "Panama" Shiflett, President of Panama, Inc., with full power and authority over the company's affairs, at least until 1962 or 1963, when the company was bought by Associated Oil and Gas Company, a foreign corporation. Panama, Inc. was a corporation engaged in the business of constructing, building and laying pipelines for the transmission of oil, gas and other petroleum products. The business was organized a number of years ago by M. E. Shiflett, called Panama Shiflett, who knew the business, got along with his employees who were willing to work, and learned such business of "pipelining" by hard work and actual experience.

After trial before a jury, the trial court granted defendants' motion to disregard special issues and for judgment non obstante veredicto and rendered judgment in favor of Panama, Inc. and Associated Oil and Gas Company that the plaintiffs take nothing. Hence, this appeal by the fourteen plaintiffs above who appear as appellants. Both corporations are appellees, and the parties usually will be hereafter so designated.

The trial court submitted 57 special issues to the jury dealing with 14 parties plaintiff. While appellees excepted to the

trial court's permitting this case to be tried as filed and excepted to the overruling of their motions to sever and plea of misjoinder, we think, though some difficulty results in the action by reason of the many plaintiffs involved, the trial court was within its discretion in overruling the motions, and that the actions are based upon common or related facts generally. A multiplicity of suits was avoided by the trial court's action. Appellees' complaints above are overruled.

All of the 57 special issues mentioned above were answered in favor of appellants. While the issues dealt with 14 appellants separately, they may be illustrated as follows:

"Special Issue No. 1

Do you find from a preponderance of the evidence that during the years 1964 and 1965, Panama, Inc., by and through its President, M. E. Shiflett, *agreed* to pay to Gloria Beaird a bonus for pipeline construction services performed by Gloria Beaird for Panama, Inc., during the year 1965?

Answer: We do.

If you have answered Special Issue No. 1 'We do', and only in that event, then answer:

"Special Issue No. 2

Do you find from a preponderance of the evidence that Gloria Beaird performed pipeline construction services for Panama, Inc., during the year 1965 in *reliance on such agreement*, if any you have so found?

Answer: We do.

If you have answered Special Issue No. 2 'We do', and only in that event, then answer:

"Special Issue No. 3

What do you find from a preponderance of the evidence was the amount of such

bonus *so agreed* to be paid to Gloria Beaird, if any you have so found?

Answer: $1,000.00.

If you have answered Special Issue No. 3 in any amount, and only in that event, then answer:

"Special Issue No. 4

Do you find from a preponderance of the evidence that under such agreement, if any, with Gloria Beaird, the payment of the bonus was not conditional on Panama, Inc. making substantial profits for the year 1965?

Answer: It was not conditional.

. . . . . .

"Special Issue No. 57

Do you find from a preponderance of the evidence that for the year 1965, Panama, Inc. did make substantial profits?

Answer: It did not make substantial profit." (Emphasis added)

■ With the exception of change of the name of a given party, the first four issues were repeated throughout the charge, until special issue number 57 was reached. The answer to the latter applied, of course, generally. Various sums were found by the jury as representing the amount of the bonuses allegedly agreed to be paid ranging from $1,000.00 to $8,000.-00. A total of $71,728.00 was found to have been promised as bonuses. The pleaded matter of sick leave and vacation pay were not submitted to the jury, and those items were accordingly waived by appellants for failure to preserve error, if any. The record is somewhat cumbersome and lengthy, the statement of facts alone consisting of 600 pages in addition to many exhibits. Quantum meruit was not pleaded, and the case was not tried on that theory.

Appellants contend that the trial court erred in rendering judgment n. o. v. because a verdict was returned for appellants

on sufficient evidence for recovery of bonuses and because the trial court erred in failing to make findings as stipulated on attorneys' fees which were agreed to be heard by the court without a jury.

We have carefully reviewed the evidence and the record in this case under somewhat difficult conditions as above indicated, and we are of the opinion that the trial court correctly disregarded special issues number 4, 8, 12, 16, 20, 24, 28, 32, 36, 40, 44, 48, 52, 56, and 57 as being based upon legally insufficient testimony to support jury findings thereon. At best, a mere scintilla of evidence appears in the record to support the above issues. There is "no evidence" when the testimony submitted rises no higher than a surmise or suspicion. Rigsby v. Pitner, 334 S.W.2d 837 (Tex.Civ.App., Houston 1960, writ ref'd n. r. e.); Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, 1063 (1898). The foregoing disregarded issues deal with the alleged bonuses as conditioned upon Panama's earning of a profit for the year 1965.

Most of the appellants had been employed by Panama, Inc. for several years. Shiflett testified that his employees were promised when he hired them that there would be a salary and a bonus. In 1962, Panama, Inc. had a net loss before taxes of $83,116.00. For that year of 1962, a total of all bonuses paid was $3,100.00. For the year ended December 31, 1963, Panama, Inc. had a net loss before taxes of $344,523.00. Total bonuses that year were $2,075.00. For Panama, Inc., 1964 was an extremely profitable year. That year, its net income before taxes was $1,963,335.00 and bonuses paid totaled $138,956.00. We think it clear and undisputed in effect that substantial bonuses were paid only when profits were made. Panama Shiflett himself repeatedly confirmed such fact. He testified that "If we didn't make any money, they (the employees) got nothing", and "They knew if we made money they would get a bonus because we had been doing that and that was our policy." Many statements were made by Shiflett reflecting that bonuses depended entirely upon profits, and he stated several times that he did not desire to change his testimony along that line in any respect.

Panama Shiflett told his key employees in 1965 and 1966 that he had no authority to write checks for bonuses unless the Board of Associated Oil and Gas Company approved it. Later facts bear this out. He further confirmed that he made no statement to any employee concerning the amount of any bonus which he anticipated paying. Bonuses varied from year to year, and there was no set pattern. Several appellants also testified that bonuses were related to and dependent upon profits. Apparently, the board of directors agreed to the bonuses paid from 1962–1964.

Panama, Inc. paid all of the appellants except Griffis, who was not employed in 1964, substantial bonuses for the year 1964 in addition to their salaries. All appellants who testified related such agreements or statements regarding bonuses made by Panama Shiflett as "If we get this deal over, there will be a good bonus for all of us"; "Get with it and there will be a good bonus next year"; "Now, let's get with it, do a good job and you will get a good bonus"; "I hope it will be better next year"; "Your bonus will be as good or better next year"; "We were assured that we would receive as much or more than we received in 1964"; "If we swing this contract—we're talking about (a bonus of) $25,000.-00"; "There will be a lot more next year if we just keep a'digging and get after it." Similar alleged promises were shown throughout the testimony on the part of Panama Shiflett to appellants. Testimony showed that such statements were made near Christmastime, in late 1964, in early 1965, when Shiflett handed an employee his bonus check for 1964, when he was visiting one of his jobs, and at a groundbreaking ceremony for the Associated Oil and Gas Company Building.

In 1962, Associated Oil and Gas Company purchased 80% of the stock in Panama,

Inc., and by 1963 all of it had been purchased by Associated. There was a change in ownership and management policy. However, Panama Shiflett continued to act as President of Panama, Inc. and "ran" the company. He was placed on the "big board" (Board of Directors of Associated Oil and Gas Company) from 1963 until 1966. After Associated purchased the company, Shiflett's powers were, of course, curtailed, as noted by him when he told his key employees that he had no authority to write checks for bonuses unless Associated gave its permission. When Associated purchased the stock of the company, Shiflett tried hard to obtain stock-options for his employees and himself, which were apparently promised by Associated at the time of purchase. However, such a plan was disapproved in 1965, and the stock-option plan failed. He, therefore, conditionally promised (if the above are promises) the employees of Panama, Inc. a bonus for 1965. Such alleged bonuses were never paid.

In early 1966, Associated decided to liquidate Panama, Inc. and to sell all of its equipment. A special meeting of the Board of Directors of Panama, Inc. convened on June 10, 1966, at which R. C. Allen, Secretary-Treasurer and the accountant of Panama, Inc., was present. At that time the company was in the process of liquidation. Shiflett stated that several of his employees were due bonuses which he had promised them. The directors asked for a list of employees who were due bonuses. A generous list was prepared. While Shiflett had been President of the company, he was later discharged at a meeting of the Board on June 21, 1966. His recommendation to pay bonuses was disapproved by the Board and by Associated. All jobs of employees of Panama, Inc. were terminated, and the employees were discharged about the above time in June, 1966. Some of the employees were employed by Associated Oil and Gas Company.

▪ Panama Shiflett stated that Panama, Inc. made a profit for the year 1965. However, his conclusion was not supported by fact of any type, and he was clearly not qualified to make such an assertion under the circumstances. Dallas Railway & Terminal Company v. Gossett, 156 Tex. 252, 294 S.W.2d 377, 380–381 (1956); C. McCormick & R. Ray, Texas Evidence secs. 31, 1396, 1398, 1399 (2d. ed. 1956). The auditing firm employed by Associated and Panama, Inc. was Arthur Andersen & Company, well-known in its field. The employment of Andersen's firm was agreed to by Shiflett. The audited financial statement of Panama, Inc. reflects a net *loss* before taxes of $296,000.00 in 1965. Andersen's certificate was based in part on the certification in writing of both Shiflett and appellant Allen that the "statement of income and surplus properly show the financial condition of the company as of December 31, 1965 and the results of its operations for the year ended." There was originally a dispute between appellants and appellees concerning an item of approximately 3.5 million dollars of additional income in 1965, which if added to the income, would result in an approximate $3,000,000.00 profit before taxes for Panama, Inc. for 1965. However, it was shown that this item or items represented charges made by Panama, Inc. which were doubtful, not approved, or were disapproved by alleged debtors, and that the total amount Panama, Inc. was ever going to collect of the 3.5 million dollars had been resolved and was included in the final financial statement of April 22, 1966, by Andersen & Company showing a $296,000.00 loss for 1965. Allen, the auditor and bookkeeper for Panama, Inc., conceded that by the time the final financial statement of Panama, Inc. was prepared, major or material items with other companies had been resolved and settled, and that the settlement figures were included in the audited financial statements. Andersen simply certified to financial statements as represented by the company after its own investigation,

and the real purpose of such an audit is to verify the accuracy of the company's financial statements. We see no material conflict in this testimony under the circumstances.

The employment relationships were at the will of each employee or of Panama, Inc. There was no contract for any employment for a definite term. Four of the appellants (Cloy, Walters, Swearingen and P. E. Shiflett) did not testify at all, but the jury found liability in all 14 cases.

We consequently believe that the probative evidence is in no material dispute concerning the dependence of payment of bonuses upon a reasonable profit to be earned by Panama, Inc. for the year 1965. Further, the same is true of lack of profits earned by the corporation in 1965. The controlling condition did not occur. George v. Houston Boxing Club, Inc., 423 S.W.2d 128, 132 (Tex.Civ.App., Houston (14th Dist.) 1967, writ ref'd n. r. e.); 13 Tex.Jur.2d Contracts secs. 150, 151, p. 332 et seq. (1960).

■ Moreover, since 1962–1963 all stock in the corporation had been owned by Associated Oil and Gas Company. A different policy followed. Shiflett, though President of the Panama corporation most of the time, had no authority to pay gratuities, bonuses, additional pay, or to do anything else not ordinarily incident to the operation of the business. Shiflett clearly admitted and told his employees that the consent of the Board of Directors was necessary for payment of any bonus, as was apparent in 1964 with a heavy corporate profit. Williams & Miller Gin Co. v. Knutson, 63 S.W.2d 576, 577 (Tex.Civ. App., Amarillo 1933, no writ); Sells Petroleum v. Victory Swabbing Co., 209 S. W.2d 199, 200 (Tex.Civ.App., Texarkana 1948, no writ); Standard Underground Cable Co. v. Southern Ind. Tel. Co., 134 S.W. 429 (Tex.Civ.App., San Antonio 1911, writ ref'd); Brown v. Grayson En-

terprises, Inc., 401 S.W.2d 653, 657 (Tex. Civ.App., Dallas 1966, writ ref'd n. r. e.). And see Manufacturers' Equipment Co. v. Cisco Clay & Coal Co., 118 Tex. 370, 15 S.W.2d 609, 613 (1929). Under the Texas Business Corporation Act, Tex.Rev.Civ. Stat.Ann. Art. 2.31, V.A.T.S. (1955), the business and affairs of a corporation are managed by the board of directors and not by the president or anyone else in the absence of an agreement or, as to third parties, apparent authority. If the theory of implied or apparent authority of Shiflett to pay bonuses is relied upon, such authority was neither pleaded nor submitted to the jury. See Southwestern Materials Co. v. George Consol., Inc., 476 S.W.2d 454, 456 (Tex.Civ.App., Houston (14th Dist.) 1972, writ ref'd n. r. e.). We hold that the trial court did not err in rendering judgment non obstante veredicto and in disregarding the special issues with rendition of judgment accordingly. We further hold that the payment of additional money and bonuses exceeded the power of Shiflett under the circumstances, without authority of the Board of Directors. There is no evidence that the Board from 1962 until 1966 delegated such above authority to Shiflett. The clear evidence is to the contrary. See and compare San Antonio Joint Stock Land Bank v. Taylor, 129 Tex. 335, 105 S. W.2d 650, 654 (1937); 23 Baylor L.Rev. 165 (1971); 23 Sw.L.J. 820, 844 (1969).

■ Independently, we do not think the alleged offers in 1964 and 1965 of Shiflett to pay bonuses in sums certain to employees of Panama, Inc. for the year of 1965 (with the possible exception of appellant Griffis) were sufficiently definite to constitute or result in an enforceable agreement of any kind. Shiflett's expressions were those which might be expected of a person of his enthusiasm and experience. He made no definite promises, and we think without doubt that his statements mentioned above were nothing more than encouragement of Panama, Inc. employees to do their best to earn a profit and to

work hard for the company. If they complied, a profit probably would be made and bonuses would be paid. Such statements, and many others included in the record, cannot result in serious and definite offers which might create enforceable unilateral contracts. Termination of employment was at the will of Panama, Inc. and such employment was subject to termination at any time by either party. See Drake v. Block, 247 Iowa 517, 74 N.W.2d 577 (1956). And while Shiflett attempted to ratify or confirm all actions and give the employees certain bonuses after the company was being liquidated and after this dispute arose, he was unequivocally turned down by Associated and Panama, Inc.'s Board of Directors, who he admitted were required to approve bonuses or extra compensation. We cannot assume that the actions of the Board or Boards of Directors were arbitrary or without reason under the circumstances. The alleged offers and promises with the above exception were too vague and indefinite to result in legally enforceable contracts in any event. See Edmunds v. Houston Lighting & Power Company, 472 S.W.2d 797, 798–799 (Tex. Civ.App., Houston (14th Dist.) 1971, writ ref'd n. r. e.); Morrow v. De Vitt, 160 S. W.2d 977, 983 (Tex.Civ.App., Amarillo 1942, writ ref'd w. o. m.); Texas Employers' Ins. Ass'n v. Moore, 56 S.W.2d 652, 654 (Tex.Civ.App., Waco 1932, writ ref'd); Restatement of Contracts sec. 32 (1932); Drake v. Block, 247 Iowa 517, 74 N.W.2d 577, 580 (1956); Varney v. Ditmars, 217 N.Y. 223, 111 N.E. 822 (1916); Hubbard v. Turner Department Store Co., 220 Mo.App. 95, 278 S.W. 1060 (1926); Petersen v. Pilgrim Village, 256 Wis. 621, 42 N.W.2d 273 (1950). We do not think that the case of Fruth v. Gaston, 187 S.W.2d 581 (Tex. Civ.App., Austin 1945, writ ref'd w. o. m.) is in conflict with the above-cited authority. The case of Hilgenberg v. Iowa Beef Packers, Inc., 175 N.W.2d 353, 356–357 (Iowa Sup.1970) is neither controlling nor in point. In Fruth v. Gaston the contract was specifically stated in all details.

The failure of the trial court to make findings as stipulated concerning attorneys' fees consequently becomes harmless and immaterial.

The judgment of the trial court is affirmed.