ACTION ADS, INC., Appellant (Defendant),

v.

Kenneth R. JUDES, Appellee (Plaintiff).

No. 83–4.

Supreme Court of Wyoming.

Nov. 1, 1983.

Rehearing Denied Nov. 22, 1983.

E. James Burke of Hanes, Gage & Burke, P.C., Cheyenne, for appellant.

Rex O. Arney of Redle, Yonkee & Arney, Sheridan, for appellee.

Before ROONEY, C.J., and RAPER *, THOMAS, ROSE and BROWN, JJ.

ROSE, Justice.

Appellee Kenneth Judes brought this action against his employer, appellant Action Ads, Inc., to enforce a term of the employment contract which required appellant to provide a medical insurance program for appellee. The determinative question on appeal is whether the agreement by Action Ads, Inc. to provide insurance coverage was sufficiently definite and certain to constitute an enforceable contract. We hold that it was not and will reverse.

---

\* Retired June 13, 1983, but continued to participate in the decision of the court in this case

## FACTS

Action Ads, Inc. is a Wyoming corporation with its principal place of business in Cheyenne, Wyoming. On April 23, 1981, the corporation hired Kenneth Judes as a salesman for the Sheridan area. The contract of employment contained the following term:

> "In addition, sixty days from your date of hire, Action Ads Inc. will provide a medical insurance program for you and your dependents."

Action Ads failed to provide any insurance coverage, and on November 14, 1981, Mr. Judes was seriously burned in a gas explosion in a mobile home. He brought this action against his employer to recover his medical expenses on the ground that Action Ads breached the employment contract by failing to maintain a medical insurance program for him. The trial court determined that Mr. Judes was entitled to recover the total amount of his medical expenses, $18,824.86, plus costs.

## THE ISSUE

Appellant presents the following questions for our review:

1. Whether the district court erred in finding that Action Ads had breached its employment contract with Mr. Judes;

2. Whether failure by the plaintiff to mitigate damages precludes recovery in this case;

3. Whether plaintiff failed to establish damages that he suffered as a result of Action Ads' breach of contract; and

4. Whether plaintiff should be denied recovery under the equitable doctrines of laches and estoppel.

■ We perceive the initial question to be whether the contract, as established by plaintiff-appellee, is sufficiently definite to permit the court to determine with reasonable certainty the extent of the promissor's contractual duties. Where the terms of a

pursuant to order of the court entered June 13, 1983.

contract are not sufficiently definite to permit this initial determination, the court lacks the information necessary to rule on the issues of breach of contract, damages, or duty to mitigate damages.

## CONTRACT TO PROCURE INSURANCE

It is a general principle of contract law that the plaintiff bears the burden of proving the terms of a contract. *Madrid v. Norton,* Wyo., 596 P.2d 1108 (1979). Where the plaintiff seeks to recover for breach of a contract to procure insurance, the general elements of the promised insurance policy are an essential part of the plaintiff's case.[1] 18 Couch on Insurance 2d, § 74:61, pp. 293–294; 7B Appleman, Insurance Law and Practice, § 4621, pp. 188–190. The following rule was set out in *Howarth v. First National Bank of Anchorage,* Alaska, 596 P.2d 1164, 1167–1168 (1979):

" * * * In a contract for the procurement of insurance, the party proving the contract has the burden of showing the subject matter of the contract, the risk insured against, the amount of coverage, the duration of the coverage, and the premiums to be paid."

A similar rule was applied in *Forster-Davis Motor Co. v. Slaterbeck,* 186 Okl. 395, 98 P.2d 17 (1939), a case comparable on its facts to the case at bar. There, the employee, following a job-related injury, sued his employer for damages on the theory that the employer had agreed, as additional compensation, to furnish the plaintiff with insurance that would provide the same protection as workmen's compensation would provide. The jury decided that since the defendant had not procured any such insurance, the plaintiff was entitled to damages.

On appeal, the Oklahoma Supreme Court reversed, concluding that the verdict violated the well-established rule that a valid contract must be sufficiently definite to lead to a clear conclusion as to the full duties required to constitute compliance, or to permit the accurate measurement of damages for its breach. 98 P.2d at 18. The court found that the employment contract, as proven by the plaintiff, provided no details concerning the promised insurance policy:

" * * * There was no agreement or statement as to when the defendant was to procure such an insurance policy, or when or whether such a policy was to be delivered to the plaintiff, nor any designation as to the insurance company or the character of the insurance company from which any such policy was to be procured. There was no suggestion as to the length of time any such policy should continue in force or operate, or the term for which it was to be procured in the first instance; nor was anything said as to the details, amounts or provisions to be included in any such insurance policy to be furnished by the defendant.

"In fact, if this contract was made as the plaintiff contends it was, we regard it as a practical impossibility to state what acts on the part of the defendant would constitute a clear or complete compliance therewith; nor can we see any sound or logical rule by which the damage for the breach thereof could be logically and reasonably measured. * * * If the plaintiff thought he was protected by a statement of his employer placing him in the status of an employee covered by the Workmen's Compensation Act, it is * * * unfortunate, for any such promise, if it existed, must be measured by this court for sufficient certainty to justify compensation for its breach. When tested by the applicable rules this promise or contract

---

1. The instant case and the cases cited in this opinion are concerned with the obligation of one who is not an insurance agent or broker to procure insurance for the benefit of another. A different rule may apply where an insurance broker or agent is involved, since such persons hold themselves out as experts in the field and generally are committed to obtaining insurance on terms favorable to the purchaser. In those cases, an enforceable contract to procure insurance may arise even though it remains to the broker to supply some of the terms essential to the formation of the ultimate insurance policy. See *Maryland Casualty Company v. Clean-Rite Maintenance Co.,* 380 F.2d 166, 167 (9th Cir. 1967); *Bulla v. Donahue,* 174 Ind.App. 123, 366 N.E.2d 233, 236 (1977).

is wholly indefinite and uncertain and cannot be relied upon to compensate plaintiff for his physical injuries upon plaintiff's theory of a valid contract breached to his damage." 98 P.2d at 19.

The same conclusion was reached by the Ninth Circuit Court of Appeals in *Maryland Casualty Company v. Clean-Rite Maintenance Co.,* 380 F.2d 166 (9th Cir.1967). There, the casualty company, claiming to be subrogated to the rights of the building owners, sought to enforce an agreement by the maintenance company

"'to provide insurance protection' which would have indemnified the building owners against 'any and all claims of any kind and nature arising out of the window washing operations,' * * *." 380 F.2d at 167.

The appellate court applied Oregon law and concluded that "no promise of reasonable certainty" existed. The court said further:

"The only real thrust of any promise, as such can be seen from the testimony of [the representative of the building owners], is that the insurance coverage provided by Clean-Rite was 'extra heavy' or 'complete.' These descriptions are so vague that only speculation could support a determination of the precise terms and extent of that coverage and resolution of the question of whether or not it would afford indemnity against many different types of loss, including that which was sustained here. We therefore hold that the alleged contract is, for lack of certainty in its terms, unenforceable, and that the district judge properly granted the appellee's motion for a directed verdict." 380 F.2d at 168–169.

■ These cases stand for the principle that in a suit on a contract to procure insurance, the plaintiff has the burden of proving the elements of the insurance policy with sufficient certainty to enable the court to establish damages in the event of breach. The corollary to that principle is a well-known rule: The measure of damages for breach of a contract to obtain insurance is that amount which would have been recovered had the insurance been furnished as

agreed. *Mid-America Corporation v. Roach,* Okl., 412 P.2d 188, 191 (1966); *Les Shellabarger Chevrolet, Inc. v. Romero,* Colo.App., 490 P.2d 98, 99 (1971).

■ In the present case, the extent of the undertaking of Action Ads to furnish insurance is contained in the following term of the parties' employment contract:

"In addition, sixty days from your date of hire, Action Ads Inc. will provide a medical insurance program for you and your dependents."

The appellee offered no evidence as to the risks insured against, the amount of coverage, or any other details of the "insurance program" that Action Ads, Inc. was obligated to provide. There was no proof of the insurance carrier contemplated by the parties. Most important, there was no showing that the injury actually sustained by Mr. Judes would have been covered by the insurance program had Action Ads fully complied with the employment contract.

It is apparent that the pertinent contract term is not sufficiently definite and certain to permit this court to determine the extent of the promised performance. Without that information, we are unable to measure the damages to which the promisee might reasonably be entitled in the event of a breach. The indefiniteness of the agreement is due to the absence of any evidence whatsoever concerning the elements of the insurance coverage that Action Ads was obligated to provide. Since the plaintiff failed to show to what extent, if any, the promised insurance program would have compensated him for his injury, we hold that the agreement to provide insurance was too uncertain and indefinite to be enforceable.

Reversed.

RAPER, Justice, Retired, concurring.

I am in concurrence with the majority opinion. The only purpose of this opinion is to enlarge upon that of the majority.

This court has already decided that:

"The law is clear that a broker or agent who, with a view to compensation for his

services, undertakes to procure insurance for another and through fault or neglect fails to do so, will be held liable for any damage resulting. His liability arises under the concept that he is agent for the insured in negotiating for a policy and owes a duty to his principal to exercise reasonable skill, care and diligence in causing the issuance of a policy. His liability may arise either for breach of contract or negligent default in the performance of a duty imposed by contract, at the election of his client. 43 Am. Jur.2d Insurance § 139, pp. 221–222; Annot., Liability of Insurance Broker or Agent to Insured for Failure to Procure Insurance, 64 A.L.R.3d 398 §§ 2 and 3 in particular; 3 Anderson, Couch on Insurance 2d §§ 25:46, 25:47, 25:57–25:60; *Arceneaux v. Bellow,* La.App., 395 So.2d 414 (1981), cert. denied 400 So.2d 669; *Sloan v. Wells,* 296 N.C. 570, 251 S.E.2d 449 (1979); *Keller Lorenz Co., Inc. v. Insurance Associates Corp.,* 98 Idaho 678, 570 P.2d 1366 (1977); *Insurance Management of Washington, Inc. v. Eno & Howard Plumbing Corp.,* D.C.App., 348 A.2d 310 (1975). * * *" *Hursh Agency, Inc. v. Wigwam Homes, Inc.,* Wyo., 664 P.2d 27, 32 (1983).

As pointed out in footnote 1 of the majority, we do not apply the same rules applicable to one in the business of selling insurance to one in the position of Action Ads, Inc. carrying on a business other than selling insurance.

In such case the ordinary rules of contract law would apply and are controlling. 1 Restatement of the Law, Second, Contracts 2d § 33 (1979) provides:

"(1) Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.

"(2) The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.

"(3) The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance."

While the parties appear to agree that there was an agreement that appellant would furnish to appellee a policy of health insurance from an objective point of view by a judiciary called upon to furnish a remedy, the "agreement" was too nebulous, too vague and too uncertain to be a contract. The letter from appellant to appellee notifying appellee the terms of his employment with respect to health insurance merely stated:

"In addition, sixty days from your date of hire, Action Ads Inc. will provide a medical insurance program for you and your dependents."

An applicable definition of a "program" is a plan of procedure. Webster's Third New International Dictionary (1971). There are many types of health insurance plans. In some, the employee pays the entire premium. In some, the employer pays part and the employee part. There is a wide variation of coverages: total coverage, a percentage is covered and there are fixed amounts per day for hospitalization and various medical procedures. Some cover hospitalization but not a physician's or surgeon's medical attention, etc., etc.

There was no reasonable certainty as to the type of insurance coverage which, if any, would be afforded appellee. It is reasonable to believe that in view of the 60-day waiting period, such would depend on the kind of a producer the appellee turned out to be. He did not produce. His total commissions over several months starting April 23, 1981, amounted to only $580.09.

On August 27, 1981, appellee inquired of appellant whether he was covered by health insurance. He was advised by letter that he was not. No objection was made. The details of insurance coverage were never discussed between the parties. After August 1981, appellee did no soliciting of business. Prior to November 1981, he conducted no business for appellant. Even while appellee was purportedly working for appellant, he held himself out as unemployed

and collected $2,448 in unemployment benefits. Under those circumstances, there is simply no way for a court to fashion an appropriate remedy contemplated by "(2)" of the Restatement rule, supra. While courts do their best to award damages whenever possible, the impossible is not required. Though contracts are construed most strongly against the drafter, *McGinnis v. General Petroleum Corporation,* Wyo., 385 P.2d 198, 201 (1963), courts will not permit parties to strain construction to bring the contract within that rule, *Reed v. Wadsworth,* Wyo., 553 P.2d 1024 (1976). Courts cannot write a contract which the parties have not made. *Quin Blair Enterprises, Inc. v. Julien Construction Company,* Wyo., 597 P.2d 945 (1979). There must be some reasonable basis for computation in the evidence if not in the contract.

The rule of definiteness is applied to all types of contracts and, contrary to the views of the dissent in this case, the court must find something to hang its hat on before damages can be determined. There is nothing of that sort here. Under the Restatement rule, supra, some employment contracts which are analogous have been decided. In *Douglass v. Panama, Inc.,* Tex. Civ.App., 487 S.W.2d 228 (1972), aff'd 504 S.W.2d 776 (1974), it was held that a statement by the company president when he hired various employees that there would be a salary and a bonus is too indefinite to be enforceable as to the bonus. The corporation paid bonuses when it had profitable years but did not when it had a year of loss. The promise was not considered sufficiently definite to require payment of a bonus in a year of loss but was too vague and indefinite to result in a legally enforceable contract even in the event of a profit. It was held in *Petersen v. Pilgrim Village,* 256 Wis. 621, 42 N.W.2d 273, 274, 18 A.L.R.2d 206 (1950), that an agreement that the plaintiff would be paid a stated salary and that he "would share in the profits of the corporation" was too indefinite as to compensation to establish a valid and enforceable contractual obligation in that there is no basis for computation.

The appellee in this case produced no evidence other than the employment contract and his medical expense. It is suggested that if he had produced a policy of insurance of the type purchased by appellant to cover employees of appellant similarly situated, then the court may have been able to make reasonably certain that which is uncertain.

I have another concern, though not controlling. I seriously question that there was any competent evidence to support the proposition that appellee was even employed by appellant at the time of his injury. The explosion in the mobile home, which injured appellee, did not occur until November 14, 1981. The last order placed by appellee with appellant was in October 1981. Any employment relationship between them thereafter was only a windup of their affairs. That, coupled with appellee drawing unemployment benefits and going into a trucking business, terminated appellee's employment.

I can see no justice in law or fact to stick appellant as an insurer of all of appellant's hospital and medical expense.

I concur.

BROWN, Justice, dissenting, joined by THOMAS, Justice.

I cannot agree with the majority. Appellant promised to provide appellee a "medical insurance program." However, appellant failed to carry out this promise. The majority allows appellant to use this dereliction to defeat appellee's claim. As a result, appellee gets no recovery for the $18,824.86 he incurred in medical expenses.

The majority talks a great deal about the indefiniteness of the contract. The contract was to provide medical insurance. Medical insurance is not some new and mysterious phenomenon. It should be an unnecessary statement of the obvious that medical insurance provides coverage for medical expenses. The majority seems to say that the agreement between the parties was indefinite because it did not spell out: 1) The elements of an insurance policy, 2)

the amount to be received had the insurance been furnished, 3) the risks covered, 4) the contemplated insurance carrier, and 5) the specific injuries covered by the insurance appellant was to provide.

The majority concludes that there was a failure of proof in these indefinite areas of the contract of the parties. It is no wonder that there was a "failure of proof." The majority wants appellee to conjure up an insurance policy where none existed. But, what did exist was a contract between appellant and appellee. There is no indefiniteness regarding appellant's obligation to provide "medical insurance" under the contract.

A contract is construed most strongly against the party who drafted it. *McGinnis v. General Petroleum Corporation,* Wyo., 385 P.2d 198 (1963). Here the agreement was produced by appellant and on its letterhead. Appellee had nothing to do with the language of the agreement. Appellant caused all the indefiniteness referred to in the majority opinion.

Appellee did prove the terms of the contract between appellant and appellee by introducing the letter agreement of April 23, 1981, which was clear on its face: "In addition, sixty days from your date of hire, Action Ads *will provide a medical insurance program for you and your dependents.*" (Emphasis added.) The contract does not state the type of program which was to be provided, only that a coverage would be provided. Appellant, in effect, became the insurer, since the term of the contract was that coverage would be provided. The only uncertainty in this contract concerns the amount of coverage.

In essence then, appellant breached its contract with appellee. As a result, appellant was damaged because he had no insurance coverage. The only question left was the amount of the damage.

In *Stanolind Oil & Gas Co. v. Kimmel,* 68 F.2d 520, 522 (10th Cir.1934), the court stated:

" 'A party, who has broken his contract, will not be permitted to escape liability because of the lack of a perfect measure of the damages caused by his breach. * * *

" 'A reasonable basis for computation, and the best evidence which is obtainable under the circumstances of the case and which will enable the jury to arrive at an approximate estimate of the loss, is sufficient. * * * ' "

In *Shannon v. Shaffer Oil & Refining Co.,* 51 F.2d 878, 881–882 (10th Cir.1931), the court stated:

" * * * [W]here there is proof, within the permissible range of certainty, that a right of plaintiff has been invaded, he should not be denied a substantial recovery because of the difficulty in accurately measuring his damages. The later authorities recognize the distinction between the case where uncertainty exists as to whether any substantial damage resulted, and the case where the uncertainty exists only as to the extent of such damage. * * *

\*    \*    \*    \*    \*    \*

" ' * * * But when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damage which he has caused is uncertain. * * * ' "

" 'The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery. [Citations.]'

" * * * Furthermore, a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible."

An injured party may recover all damages which were foreseeable at the time of

the contract as a probable result of the breach. These damages may be foreseeable "either because they were a natural result or because they were a contemplated result of the breach." *Pipkin v. Thomas & Hill, Inc.*, 33 N.C.App. 710, 236 S.E.2d 725 (1977).

" 'In awarding damages, compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made. *If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it * * *.' "* (Emphasis added.) *Arctic Contractors, Inc. v. State*, Alaska, 564 P.2d 30, 44 (1977), citing *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng.Rep. 145 (1854).

In the usual course of events, the result which occurred here was eminently foreseeable, and compensation should be given to appellee. The difficulty concerns the exact amount of compensation which he should receive.

"The measure of damages for breach of contract is that which would place plaintiff in the same position as he would have been had the contract been performed, less proper deductions. * * * " *Panhandle Eastern Pipeline Company v. Smith*, Wyo., 637 P.2d 1020, 1025 (1981).

Here, if appellant had performed, appellee would have had some of his expenses covered. He cannot prove the exact amount of his damages because of the nature of appellant's breach. Where one claims damages, other than nominal, he must prove them, but exact proof of the amount is not necessary in all instances. *Western National Bank of Lovell v. Moncur*, Wyo., 624 P.2d 765 (1981).

"The existence of damages must be proved; the amount of damages must be decided with all the certainty the case permits. * * *

　　　*　　*　　*　　*　　*　　*

" 'There are many cases in which, by reason of the ordinary experience and belief of mankind, the trial court is convinced that substantial pecuniary harm has been inflicted, even though its amount in dol-

lars is incapable of proof. If the defendant had reason to foresee this kind of harm and the difficulty of proving its amount, the injured party will not be denied a remedy in damages because of the lack of certainty. * * *' [Citation.]" *Panhandle Eastern Pipe Line Company v. Smith*, supra, at 1026.

Some courts go so far as to place the burden of proof of the amount of damages on the defendant when the plaintiff has proved the existence of damage and when the amount is uncertain because of the defendant's wrongdoing. *Contemporary Mission, Inc. v. Famous Music Corporation*, 557 F.2d 918 (2nd Cir.1977). Other jurisdictions hold that, in the case of lost profits, a somewhat comparable situation, once a plaintiff raises a reasonable inference as to the amount of lost profits caused by defendant's breach of a covenant not to compete, the defendant is liable for such amount unless it presents evidence to rebut the inference and establish that the loss was not caused by the breach. *Atlas Ready-Mix of Minot v. White Properties*, N.D., 306 N.W.2d 212 (1981); and *B & Y Metal Painting, Inc. v. Ball*, Minn., 279 N.W.2d 813 (1979).

I do not go so far as to suggest that the burden of proof or persuasion shifts in such situations. I merely reiterate that,

" * * * there is a clear distinction between the measure of proof necessary to prove that the plaintiff has sustained some damage and the measure of proof necessary to allow the factfinder to fix the amount of damages. * * * " *Panhandle Eastern Pipe Line Company v. Smith*, supra at 1026.

Appellee proved that he suffered some damage. A plaintiff will not be denied a substantial recovery if he has produced the only evidence available and it is sufficient to afford a reasonable basis for estimating loss. *Johnson v. Flammia*, 169 Conn. 491, 363 A.2d 1048 (1975). Here, the only evidence available was that appellant failed to provide a medical insurance program, and that appellee incurred medical expenses of

$18,824.26. Appellee simply could not prove the exact portion of his expenses which would have been covered had appellant not breached the contract.

This case is different from *Albin Elevator Company v. Pavlica,* Wyo., 649 P.2d 187 (1982), a lost-profits case, where we held that appellant had not supported his claim because he did not present any evidence that his farm was a profitable operation, which he could have done, and because he did not present any testimony which connected his farming practices with his neighbor who had testified that he had made a profit for the same year. Appellant there, then, was denied recovery because he did not present available evidence which would have shown the amount, if any, of lost profit; appellee here proved the terms of the contract, presented evidence of damage and the only available evidence of amount of loss. Since he did, I would affirm the trial court's determination of the amount of damages.