Meredith **GIBBS** et al., Appellants,

v.

**ALLSTATE INSURANCE COMPANY**
et al., Appellees.

No. 16592.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 15, 1965.

Rehearing Denied Feb. 12, 1965.

$11,409.77 (the amount of a judgment entered against him in the Gibbs suit). The Gibbs entered the declaratory suit praying for judgment over against Odom for anything he might recover against Allstate up to $11,409.77.

The jury found: (6) the $11,409.77 represented a fair and reasonable settlement in Gibbs v. Odom; (11) on September 8, 1962, Humphrey agreed to procure an automobile liability policy for Odom without Odom agreeing to furnish any additional information; (12) Humphrey was acting as an agent for Allstate when he agreed to procure liability insurance for Odom; (13) Humphrey was clothed with apparent authority to act for Allstate in securing assigned risk policies; (14) Odom relied upon acts, conduct or want of ordinary care of Allstate; (15) Odom was harmed by such reliance; (16) Odom was damaged in the amount of $11,909.77.

*Upon motion for judgment non obstante veredicto* filed by Allstate, the court disregarded the answers to issues Nos. 12, 13 and 14, and entered judgment that no contract of insurance or other contract ever existed between Allstate and Odom and the Gibbs; that Odom take nothing against Allstate; that Odom have judgment against Humphrey, and the Gibbs have judgment over against Odom.

Odom and the Gibbs appealed from that part of the judgment absolving Allstate from liability. Humphrey appealed from the judgment in favor of Odom against him.

Odom and the Gibbs contend the court erred in disregarding issues Nos. 12, 13 and 14, and erred in failing to hold as a matter of law that Allstate was liable for damages caused by the breach of Humphrey's contract to procure a liability policy for Odom.

According to Odom's testimony, he, in July of 1961, desired to obtain liability insurance. He was unmarried and under 25 years of age. He knew it would be diffi-

Jones, Fillmore, Robinson & Lambert, and Kenneth Ray Farabee, Wichita Falls, for appellants Meredith Gibbs and others.

Gowin Davis, Wichita Falls, for appellant Bruce L. Odom.

Humphrey, Gibson & Darden, and Lee Humphrey, Wichita Falls, for appellant John H. Humphrey.

Nelson & Sherrod and Eugene Sherrod, Jr., Wichita Falls, for appellee Allstate Insurance Co.

RENFRO, Justice.

Suit No. 72442–C was filed in Wichita County by Meredith and Barbara Gibbs against Bruce L. Odom for injuries sustained by them in an automobile collision with Odom.

Odom called upon Allstate Insurance Company to defend him in said suit. Allstate refused.

Allstate filed suit No. 72745–C in which it prayed that judgment be entered declaring there was no policy in force or other contract between Odom and Allstate, and that it had no duty to defend Odom in the Gibbs suit. In the latter suit Odom filed a counterclaim against Allstate and its agent Humphrey, in which he alleged Allstate and Humphrey had breached a contract to procure a policy of automobile liability insurance for him, to his damage in the sum of

cult to secure a liability policy. He went to the Allstate booth in Sears store and talked to Humphrey. He was told by Humphrey that he could not get a policy with Allstate. Humphrey then explained the assigned risk plan (Art. 6701h, § 35, Vernon's Ann.Tex.Civ.St.). It was explained that his application would have to go to Austin and be assigned to some particular insurance company. He filled forms for assigned risk and left his $93.00 check with Humphrey. He knew he would not be insured until a policy was mailed to him. A few days later he received, at Allstate's booth, a policy issued by Continental Casualty. In July of 1962, he received a letter from Continental informing him his premium was due in 45 days, a renewal form was enclosed. He completely filled in the form, but never returned it to Continental. Next he received a letter from Continental dated August 22, which informed him the policy had been cancelled for nonpayment of premium. After receiving the cancellation notice from Continental he went to see Humphrey. "A. * * * the reason I hadn't gone down sooner was that I was working that week and that weekend was the only time I could go down and when I got to the office, Mr. Humphrey was the only agent there at that time so I introduced myself to him and I told him that he had gotten me a policy the year before and I took the renewal form with me it had quite a bit of information, in fact, all the information he needed to make a new application or to renew, whichever one he could do, and I told him that I wanted to renew if it was still possible and he told me that he couldn't renew it since the policy had elapsed and that he would make a new application for me." He left a check in the sum of $96.00 with Humphrey. It was not made payable to Allstate. He left thinking he would get a policy through assigned risk. He was still under 25 years of age and unmarried. He knew Allstate would not insure him. He knew when he left Humphrey that he had not been insured and would not be until he received a policy from some company. He knew it would not be Allstate unless, by chance, Allstate was required to issue a policy under the assigned risk plan. He expected Humphrey to get him a policy through assigned risk as he had the first time. He never inquired of Continental, Humphrey or anyone else if a policy had been issued to him. (Humphrey had cashed the check three days after the above occurrence but had not made application for Odom, his testimony being that he was awaiting promised information from Odom.)

The accident occurred December 26, 1962. Odom had exchanged cars in the interim and was of the opinion he had a Lloyd's liability coverage. He called Allstate in an effort to locate the Lloyd agent. He did not have a Lloyd liability policy. Allstate had no record of any policy issued to Odom.

It was undisputed that Allstate would not issue liability insurance policies to unmarried males under 25 years of age, that it does not refer unacceptable applicants to other agents, and that Allstate does not receive any of the premiums paid by an applicant for insurance under the assigned risk plan. The individual agent who assists an applicant applying through the plan accepts the premium from the applicant, deducts a commission, and sends the balance to Austin. Allstate exercised no supervision or control over policies written through the plan, and did not receive cancellation notice of such policies.

We deem it unnecessary to set out the evidence regarding the actual and apparent authority of Humphrey to bind Allstate for the reason that Odom's own testimony, summarized above, in our opinion, establishes the fact that he knew he was not dealing with Allstate on the occasion in question.

Odom knew Allstate would not issue a policy to him. He knew Humphrey was an Allstate agent. The plan was carefully

explained to him. He understood clearly that Humphrey could not bind Allstate or any other company, but, in this instance, could only apply through the plan. He knew Hunphrey could not direct the application to any company, but could merely send it to the plan.

■ In our opinion the evidence shows that Odom knew that Humphrey was not acting for Allstate, but on the contrary was, as an individual, acting for Odom in agreeing to obtain liability insurance for Odom. Such being the case, Odom could not recover from Allstate. Home Ins. Co. v. Lake Dallas Gin Co., 127 Tex. 479, 93 S.W. 2d 388 (1936); Camden Fire Ins. Co. v. Hill, 276 S.W. 887 (Tex.Com.App., 1925); Overland Sales Co. v. American Indemnity Co., 256 S.W. 980 (Galveston Civ. App., 1923, no writ hist.); Smith v. American Radiator & Standard Sanitary Corp., 166 S.W.2d 757 (Galveston Civ.App., 1942, no writ hist.).

■ In our opinion the evidence did not support the issues which the court disregarded. Odom knew he was dealing with Humphrey as an individual, not as an agent for Allstate. Since an instructed verdict should have been granted to Allstate, it was not error to render judgment for Allstate notwithstanding the verdict.

■ Appellant Humphrey contends that had a policy been procured by him for Odom it would have been limited to the ordinary terms of $5,000 per person, $10,000 per accident and $5,000 property damage; that there was no proof to support the damages determined by the jury so as to fit the coverage.

Both Mr. and Mrs. Gibbs testified in detail as to the nature and extent of the personal injuries sustained by them in the accident. Odom testified the agreed judgment was entered into on the bases of $5,000 personal injury to each, and $1,400 property damage.

The evidence is sufficient to support the finding on damages.

Humphrey also contends that Odom failed to use diligence to determine that no policy had been issued to him; hence, he is precluded from asserting damages against Humphrey for lack of coverage, that Odom has no cause of action because he failed to comply with the law requiring a written application, and that Odom should not recover because he could not certify that he had, within the preceding sixty days, tried and been unable to obtain liability insurance.

■ The jury found that on September 8, 1962, Humphrey agreed to procure a liability policy for Odom, that Odom was not requested to furnish any additional information, that the agreement was not conditioned upon Odom furnishing additional information and further found against Humphrey's claim of lack of diligence on Odom's part. The above findings are amply supported by the evidence.

■ An insurance broker agreeing to obtain insurance owes the legal duty to obtain it, and, if he cannot do so, to notify the applicant of his failure. Burroughs v. Bunch, 210 S.W.2d 211 (El Paso Civ.App., 1948, ref.).

It is undisputed Odom gave Humphrey a $96 check. Humphrey cashed the check and retained the proceeds. It was Odom's testimony that he thought the check and the information given Humphrey was all that was needed by Humphrey to fulfill his agreement to procure insurance for Odom. Humphrey never called upon, nor attempted to call, Odom for any additional information.

In view of the jury findings, and the holding in Burroughs v. Bunch and cases therein cited, we hold that the record supports the judgment in favor of Odom against Humphrey.

Judgment affirmed.