GEORGE R. SHAW *et al.*, Plaintiffs-Appellees, *v.* BOBBIE G. WEST, Defendant.—(ALLSTATE INSURANCE COMPANY, Garnishee-Appellant.)

(No. 70-237; ▮▮▮▮▮▮▮▮▮▮)

Second District—September 2, 1971.

Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, (Julian Johnson, of counsel,) for appellant.

Diver, Ridge, Brydges & Bollman, of Waukegan, for appellees.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

The Allstate Insurance Company brings this appeal from a judgment against it as garnishee entered July 7, 1970, by the circuit court of Lake County.

On November 30, 1964, Bobbie West, a member of the U.S. Navy, was visiting with his sister in Detroit, Michigan. He had just left Pearl Harbor and was on his way to his next assignment at Great Lakes Naval Training Center in North Chicago, Illinois. On that day, he went to an automobile agency and arranged to purchase a 1964 automobile. He informed the automobile salesman that he would obtain full insurance coverage through Allstate.

With that purpose, West went directly to a Sears, Roebuck store in Detroit and went up to an Allstate booth maintained there. The booth had a large "Allstate Insurance" sign above it and had a bar where business could be transacted. West talked to Robert Sverid and informed

him that he had just purchased an automobile and wished to obtain complete insurance coverage as soon as possible since he had to be at Great Lakes by December 13th or 14th. When he told Sverid that he was single, 26 years old and would be stationed out of State, he was advised that it would not be possible to obtain Allstate insurance but that he could obtain insurance through an Assigned Risk Plan. Sverid explained that under the plan his application would be "pulled out of a hat" by the eventual insurer who would send him the policy but that he would not be covered until the policy was issued. Sverid filled out an application for West and, although it was not possible to complete it until West knew the serial number of his automobile, West signed the application and paid Sverid $75. Sverid told him he would forward $3 with his application and hold the balance to pay the assigned insurer the premium and that the policy should be forthcoming within 5 to 7 days thereafter.

West testified that he telephoned the Allstate booth on December 1 and, since Sverid was not there, gave the serial number to another man who answered the call. West became concerned when he did not receive his policy and telephoned the booth again on December 9 and talked to Sverid. Sverid told him not to worry, to go on to Great Lakes since he was covered by insurance and that delivery of the policy was probably tied up in the Christmas mails.

West arrived at Great Lakes on December 12 and was involved in an automobile accident on December 14 wherein George and Phyllis Shaw were injured. The Shaws sued West and obtained judgments against him in the amounts of $3,000.00 and $32,000.00 respectively. West's application was assigned to State Farm Mutual Insurance Company on December 17 and they wrote to West with a request for the $72 premium.

Sverid, who left Allstate in 1967, testified at an evidence deposition that he did not recall ever receiving the serial number of West's car and denied he talked to West on December 9.

It is not contended that Allstate has any obligations in this matter under a policy of insurance but as principal for the acts of their agent, Sverid, under the doctrine of respondent superior. The trial court found that Sverid had entered into a binding agreement with West on November 30 to procure insurance and that at such time Sverid was the agent of Allstate with either actual or apparent authority to enter into such a contract on their behalf. It is not disputed that the measure of damages for a breach of a contract to procure insurance is based on the terms of the policy that was to be procured. (*Gothberg v. Nemerovski*, 58 Ill.App. 2d 372, 383; *Johnson v. Illini Mutual Insurance Co.*, 18 Ill.App.2d 211, 216.) There is also no dispute that on November 30, 1964, Sverid was an employee of Allstate under an exclusive agency agreement and that

the booth maintained in the Sears store was operated by Sverid and approximately a dozen other Allstate agents on a rotating basis. Sverid was authorized to bind Allstate and a subsidiary company and to accept applications for the Assigned Risk Plan.

The trial court, in a memorandum opinion, makes much of the fact that West specifically sought out Allstate, apparently as a result of their barrage of media advertising, to obtain his insurance and that he relied not on Sverid but on his employer. That opinion concludes that if Allstate did not furnish Sverid with actual authority to bind it to an agreement to procure insurance through the Assigned Risk Plan, it, at the least, clothed Sverid with the apparent authority so to do. The court repeats the facts that the booth was managed only by Allstate agents, bore an Allstate sign and was located in a Sears store. The court permitted itself the levity (we presume) of stating that West believed he was in good hands with Allstate.

Although there are no Illinois cases on this precise point, a similar situation existed in the case of *Gibbs v. Allstate Insurance Company*. 386 S.W.2d 606. In that case, Bruce Odom, aged 25 years and unmarried, visited an Allstate booth in a Sears store in Texas in July, 1961, to obtain liability insurance on his automobile. At the booth, Odom talked with an Allstate agent and employee named Humphrey. Humphrey told Odom that he could not be insured by Allstate but that it might be possible to obtain insurance through the Texas assigned risk plan. Accordingly, Odom signed an application, and paid Humphrey $93.00. Humphrey forwarded the application to the plan and, in due course, a policy was issued by the assigned insurer, Continental Casualty. A year later, Odom allowed the Continental policy to expire for non-payment of premiums and returned to the Allstate booth to renew that policy or obtain other insurance. Humphrey again took Odom's application and his check for the first year's premium but failed to process the application. Shortly thereafter Odom was involved in an accident before he was covered under any policy of insurance and he brought suit against both Humphrey and Allstate. The jury found that Humphrey was acting as an agent for Allstate when he agreed to procure insurance for Odom; that Humphrey was clothed with apparent authority to act for Allstate in the transaction; and that Odom had relied upon Allstate to protect his interests in the matter. The trial court disregarded all three findings and found that Allstate had no liability whatsoever either to Odom or the parties injured in the accident. On appeal, the Court of Civil Appeals of Texas affirmed the lower court and held that under the circumstances it was evident that Odom placed his reliance, not on Allstate, but on Humphrey as an individual. The court pointed out that Odom knew he would not be issued a policy by Allstate and that his application would be forwarded to the

plan for assignment. The court concluded that Humphrey acted as agent for Odom to place his application to the plan and not as an agent for Allstate.

The facts in the Gibbs case are significantly similar to those before us. Although, as the trial court has emphasized, West first went to the Allstate booth to obtain Allstate insurance, he was apprised immediately that he could not obtain insurance from them. As in *Gibbs,* the Allstate employee, Sverid, explained the assigned risk plan and took his application and check. The application signed by West (and a carbon copy was given to him on November 30) contained a statement immediately above his signature that he understood that Sverid was "*   *   *   not acting as an agent of any company for the purposes of this insurance and has no authority to bind such insurance   *   *   *".

The case of *Gothberg v. Nemerovski,* 58 Ill.App.2d 372, cited by the plaintiffs as their principal authority, although similar in certain respects to this cause contains an important distinction. In *Gothberg,* Ronald Jackson telephoned the Illinois State Auto Insurance Agency, an insurance broker, on December 10, 1956 and requested insurance. On December 11, Albert Levenstein called at Jackson's home, took his application together with a payment of $10.00 and gave him a receipt of the Agency signed by him as agent. Levenstein told Jackson he would be covered "within an hour" after he returned to his office and completed the necessary paper work. As it turned out, the Agency did not forward Jackson's application to the insurer until a further payment was made and he was not actually insured until January 15, 1967. In the meantime, Jackson had an accident on December 23. The court found that the Agency had, through their agent, Levenstein, entered into a binding contract to procure insurance for Jackson on December 11 and when they failed to obtain the insurance they were liable to him to the extent of the insurance that they had agreed to procure. But, unlike our case, it was undisputed that Levenstein acted as agent for the Agency at the time he contracted with Jackson. The distinction is, of course, that Allstate here maintains that Sverid was not acting as their agent at the time he took West's application nor had they clothed him with apparent authority to enter into contracts on their behalf to procure insurance with other companies.

We agree with the logic of the *Gibbs* case and conclude that the trial court was in error in this matter. In view of our decision it is not necessary to comment on the other points raised in the appellant's brief. The judgments against Allstate will be reversed.

Judgments reversed.

MORAN, P. J. and SEIDENFELD, J., concur.