LEO BULLA d/b/a PROBST AND BULLA INSURANCE COMPANY *v.* EUGENE DONAHUE AND MARJORIE DONAHUE, VIRGINIA GUNDLACH

[No. 3-674A102. Filed August 25, 1977.]

*David H. Feagler,* of Plymouth, for appellant.

*Gerald A. Kamm, Daniel A. Manion, Doran, Manion, Boynton & Kamm,* of South Bend, for appellees. *Kenneth M. McDermott,* of Plymouth, for third party defendant-appellee.

HOFFMAN, J. — Plaintiffs-appellees Eugene Donahue and Marjorie Donahue filed an action in the trial court against defendant-appellant Leo Bulla d/b/a Probst and Bulla Insurance Company to recover damages for the failure of Bulla to procure insurance on certain automobiles owned by Eugene Donahue. Bulla filed an amended third-party complaint against third-party defendant-appellee Virginia Gundlach alleging that any damages sustained by the Donahues was a result of Gundlach's conduct. Trial to the court resulted in judgments for the Donahues and against Bulla in the amount of $1,170, and further, for Gundlach and against Bulla on the amended third-party complaint. Thereafter, appellant's motion to correct errors was overruled and this appeal was perfected.

On appeal appellant contends that an agreement to procure insurance must be proved with the same degree of certainty as a contract of insurance, and that the elements of a contract of insurance are necessary to assess the measure of damages. Appellant further contends that there were no direct dealings between himself and Donahues, and therefore an agency relationship between Bulla and Gundlach must be shown to establish privity of contract. He further contends there is no evidence that Gundlach was acting within the scope of her authority in her dealings with the Donahues. Finally appellant contends that he is entitled to recover from Gundlach any damages recovered against him by Donahues since Gundlach acted outside her authority in telling the Donahues they had insurance coverage.

The record discloses that on July 13, 1971, Mrs. Donahue went to Gundlach's office to obtain insurance for her husband's automobiles. Mrs. Donahue had brought her current automobile policy with her and told Gundlach she wanted a policy containing the same coverages. After reviewing the information, Gundlach informed Mrs. Donahue that the "substandard" risk companies that she represented would be more expensive, but that she wrote up insurance for Bulla and that Bulla could obtain the more desirable "standard" risk coverage through Meridian Mutual Insurance Company. This was acceptable to Mrs. Donahue. Gundlach then placed a telephone call to Bulla regarding automobile insurance for the Donahues. Bulla told Gundlach to follow their normal operating procedure and send the necessary information to him. After the telephone conversation, Gundlach, with the help of Mrs. Donahue, wrote out five pages of information. Mrs. Donahue signed the second page of the documents. Mrs. Donahue also executed a check for $150 payable to "Probst & Bulla" insurance agency. Mrs. Donahue then placed the information and the check in an envelope and mailed it to Bulla.

Upon receipt of the information, Bulla looked it over and decided "right away" he did not want the coverage and would not submit an application to Meridian Mutual. After examining the information and making his decision not to submit an application, Bulla put the information back in the envelope and placed it in a wire basket where it remained. Bulla admits that he did not immediately inform Gundlach or Donahues of his decision not to place the risk. The evidence is conflicting whether he thereafter informed Gundlach of his decision. The evidence most favorable to the appellees is that he did not so inform Gundlach.

After submitting the information to Bulla, Mrs. Donahue made several inquiries of Gundlach concerning the status of the policy and each time was assured by Gundlach that she was covered. Each time Mrs. Donahue made an inquiry, Gundlach would call Bulla and was assured by Bulla that "he was working on it."

On September 28, 1971, one of the automobiles submitted for insurance was involved in an accident. When the accident was

reported to Bulla, Mrs. Donahue was informed that Bulla had failed to obtain any insurance for the Donahues.

An insurance agent or broker who undertakes to procure insurance for another is an agent of the proposed insured, and thus owes his principal a duty to exercise reasonable care, skill and diligence in effecting the insurance. 16 Appleman Ins. L. & P., § 8831, at 449, and § 8841, at 510 (1968); 44 C.J.S., *Insurance*, § 172, at 860; 43 Am. Jur. 2d, *Insurance*, § 174, at 230; Annot. 64 A.L.R. 3d 398 (1975). Thus, if an agent undertakes to procure insurance and through his fault and neglect fails to do so, he is liable to his principal for any damage resulting therefrom. The action against the agent may be for breach of contract or for negligent default in the performance of a duty imposed by contract. 3 Couch on Insurance 2d, § 25:46, at 349 (1960); 16 Appleman Ins. L. & P., § 8831, at 449, and § 8841, at 510 (1968), *supra;* 44 C.J.S., *Insurance*, § 172, at 860, *supra;* 43 Am.Jur. 2d, *Insurance*, § 174, at 230, *supra;* Annot. 64 A.L.R. 3d 398 (1975), *supra.*

Additionally, there is implied in an undertaking to procure insurance a corresponding duty to seasonably notify the applicant in the event the agent is unable to obtain insurance. 3 Couch on Insurance 2d, § 25:47, at 353 (1960); 43 Am.Jur. 2d, *Insurance*, § 175, at 232; Annot. 64 A.L.R. 3d 398, § 4, at 413 (1975).

Appellant contends that an action for breach of an agreement to procure insurance requires the proposed insured to prove the agreement to procure insurance with the same certainty as a contract of insurance. An oral or written contract of insurance requires a meeting of the minds of the parties upon the following essential elements of a contract: 1) the subject of insurance; 2) the risk or peril insured against; 3) the amount of coverage; 4) the limit and duration of the risk; and, 5) the amount of the premium to be paid. *Farmers Mutuals Ins. Co. v. Wolfe et al.* (1968), 142 Ind. App. 206, 233 N.E. 2d 690 (transfer denied). Thus, before negotiations may ripen into a contract, the negotiations must leave nothing open for future determination. *Farmers*

*Mutuals Ins. Co. v. Wolfe et al., supra; Posey County Fire Assn. v. Hogan* (1906), 37 Ind. App. 573, 77 N.E. 670.

A proposed insured who enters into an agreement to procure insurance with an agent does so with the ultimate objective of effecting a contract of insurance. However, the performance for which the proposed insured is bargaining is the services of the insurance agent in obtaining the most favorable terms commensurate with his insurance needs. *See, Hamacher v. Tumy* (1960), 222 Ore. 341, 352 P.2d 493. An insurance agent holds himself out as an expert in his field and invites his client to rely upon this expertise in procuring a policy consistent with his needs. Thus, an agreement to procure insurance may arise even though the agent is given authority to ascertain some of the facts essential to the creation of the ultimate contract of insurance. The terms and conditions of the proposed policy need only be sufficiently definite to enable the agent or broker to procure a policy consistent with the applicant's insurance needs.

In the case at bar, Mrs. Donahue went to Gundlach to obtain an insurance policy with the same coverage as the one the Donahues then owned. After reviewing the information, Gundlach suggested that Bulla could provide the most favorable coverage through Meridian Mutual. Bulla was contacted by telephone, and during the ensuing conversation he informed Gundlach to send him the necessary information as she had done in the past. Pursuant to this request, Gundlach wrote out five pages of information which, along with a check for $150, was mailed to Bulla. The information listed the name and address of the policy holder. Included in the list of desired coverages was medical payments of $1,000 and collision coverage with a $100 deductible. The information sent to Bulla also enumerated the automobiles to be insured, including the make, model, year, serial number, date acquired and cost of each vehicle. It further set forth the principal driver and the primary use of each vehicle. The document also contained information regarding liens on the automobiles and to whom losses were payable. It also contained the names, ages and license number of each driver as well as an accident record of each. Thus, the subject of insurance, the risk or peril insured against and the

amount of coverage were sufficiently detailed in the information submitted to Bulla to enable him to fulfill his obligation of obtaining the best possible terms commensurate with the Donahues' insurance needs. The limit and duration of the risk and the amount of the premium to be paid can be found by implication. Mrs. Donahue requested a policy with the same coverage as their prior policy. She tendered $150 with the information sent to Bulla and asked whether it would be possible to make premium payments in monthly installments. Such information would enable Bulla to fulfill his obligation of obtaining the most advantageous premium and policy duration in light of the Donahues' individual needs.

Moreover, it should be noted that Bulla never requested any additional information. In fact, Bulla admits he did not even read the first two pages of information submitted to him. He failed to inform appellees of his decision not to place the insurance. And, when inquiries were made concerning the status of the insurance policy, Bulla led Gundlach to believe that he was in process of obtaining an insurance policy. *See, Gibbs v. Allstate Insurance Company* (1965), Tex.Civ.App., 386 S.W. 2d 606; *Burroughs v. Bunch* (1948), Tex.Civ.App., 210 S.W. 2d 211. The appellees were thus lulled into thinking that the information provided was sufficient.

Appellant next contends that the Donahues failed to prove the amount of damages to which they are entitled to recover. Generally, the measure of damages in an action based on failure to procure a policy of insurance is the amount which would have been due under the policy that should have been obtained. 43 Am.Jur. 2d, *Insurance,* § 174, at 230, *supra*; 44 C.J.S., *Insurance,* § 172(a), at 863. The Donahues requested $1,000 medical payments coverage. The record discloses $20 in medical bills. The Donahues also requested $100 deductible collision coverage. There was evidence as to the cost of the automobile, its value before the accident, and its value after the accident. Such evidence was sufficient to sustain the award of damages. *See, Brown v. Cooley* (1952), 56 N.M. 630, 247 P. 2d 868, 872.

Appellant next contends that to recover on a theory of contract, privity of contract must be shown by demonstrating an agency relationship between himself and Gundlach. Additionally, he asserts that if there were an agency relationship, there is no evidence Gundlach was acting within the actual or apparent scope of her authority in her dealings with the Donahues.

Appellant first asserts that Mrs. Donahue's testimony "unequivocally" demonstrates that she knew Gundlach was not an agent of Bulla. However, appellant's reference to the transcript in support of this assertion discloses that Mrs. Donahue testified that she inquired as to the relationship of Gundlach with Bulla and was informed that Gundlach "wrote up insurance for him", but that Gundlach did not state in the conversation that she was employed by, or was an agent of, Bulla. Taken as a whole, such testimony does not establish Mrs. Donahue's knowledge of an absence of an agency relationship between Gundlach and Bulla. Rather, such testimony indicates that she was informed of the business relationship between Gundlach and Bulla. Reasonable inferences to be drawn from the remainder of the testimony are that (1) the question of whether Gundlach was an "agent" of Bulla simply never arose during the conversation or that (2) Gundlach was not employed by the Probst and Bulla Insurance Company as one of their soliciting agents.

The evidence discloses that for approximately nine years Gundlach had a business relationship with Bulla whereby she would refer business to Bulla's insurance agency in exchange for a percentage of the commission received on the policy. The normal procedure utilized in their dealings was that Gundlach would call Bulla on the telephone regarding insurance for a particular client, send Bulla the needed information, and Bulla would then mail back the policy. Bulla had given Gundlach various application and claim forms with his name thereon for use in servicing clients. Mrs. Donahue was informed about the nature of their relationship when Gundlach said she "wrote up insurance" for Bulla. Moreover, the telephone call to Bulla in which he told Gundlach to send the necessary information led Mrs. Donahue to reasonably believe that Gundlach had authority to act on behalf

of Bulla. *Storm v. Marsischke* (1973), 159 Ind. App. 136, 304 N.E.2d 840. There was thus sufficient evidence to establish an agency relationship between Gundlach and Bulla.

Appellant contends that the only evidence upon which the Donahues could rely for recovery is Gundlach's assurance that the Donahues were covered. However, Donahues' action is based upon Bulla's breach of duty to procure insurance and breach of his implied duty to notify the Donahues of his inability to obtain such insurance. Bulla admits he did nothing to effect such insurance and the evidence most favorable to the appellees is that he failed to inform either Gundlach or the Donahues of his decision not to submit an application for insurance. Moreover, he led Gundlach to believe that he was working to obtain the desired coverage when he had already decided that he would not even attempt to place the risk with any insurance company. It is these acts which form the basis of Bulla's liability to the Donahues.

Appellant asserts that Gundlach's statement to Mrs. Donahue of insurance coverage entitles him to recover damages from Gundlach for acts outside the scope of her authority. See, 3 C.J.S., *Agency*, § 268, at 27. However, the principal and agent relationship imposes certain duties and obligations on the principal. One of these is the duty of exercising good faith and care to prevent the agent from suffering harm during the existence of the relationship. Additionally, there is an implied obligation to do nothing to thwart the effectiveness of the agency. *Montgomery Ward & Co., Inc. v. Tackett* (1975), 163 Ind. App. 211, 323 N.E.2d 242. Thus, an action by the principal against his agent may be avoided by the breach of contract by, or contributing fault of, the principal. Restatement (Second) of Agency, § 415, at 273 (1958).

From the record before us there is sufficient evidence from which the trier of fact could have found Bulla failed to exercise good faith in his dealings with Gundlach. Thus, appellant is not entitled to recovery from Gundlach in the case at bar. Accordingly, the judgment of the trial court must be affirmed.

Judgment affirmed.

Garrard, J. concurs in result.

Staton, P.J. dissents with opinion.

## DISSENTING OPINION

STATON, P.J.—I dissent from the majority opinion for these reasons: (1) there is no evidence of a binding insurance contract; (2) there is no evidence that Bulla was Donahue's agent and the trial court did not find that an agency existed; and (3) the authority cited by the majority opinion can be easily distinguished from the facts in this case.

The binding contract appears to have been gleaned from the expression attributed to Bulla that "he was working on it." This expression used by Bulla over the telephone to Gundlach has been interpreted by the majority as an application accepted and being processed. Actually, no application had been prepared or signed by Mrs. Donahue or Gundlach. The only assurance of possible coverage came from Gundlach, not Bulla. Mrs. Donahue stated that she had ". . . a doubt in my mind wondering. . ." whether she was covered at the time the information was mailed to Bulla. Before she left for California, Gundlach said ". . . not to worry, you are covered." Bulla's unrefuted testimony was that after the information was submitted, he would look at it ". . . and if the application was accepted it had to be signed."[1] Gundlach testified

---

1. I would disagree with the majority that there were sufficient facts submitted by Gundlach to Bulla to ascertain (even by inference) the limit and duration of the risk and the amount of the premium to be paid. Such facts are simply not in the record. Mrs. Donahue testified that she did not discuss all of the coverage with Gundlach, let alone the risk to be insured. The information taken from a previous policy by Gundlach was just that, information. Donahues had no way of knowing or reason to expect that Bulla would provide the same coverage. The unsettled state of the insurance agreement is obvious in that Mrs. Donahue questioned even the possibility of making monthly payments. If everything was crystal clear (as the majority would have us believe), why did Mrs. Donahue not assume the matter of monthly payments as well? Amount and manner of payment of consideration are material elements in an insurance contract. *See Farmers Mutual Ins. Co. v. Wolfe* (1968), 142 Ind. App. 206, 233 N.E.2d 690. Before negotiations may ripen into a contract, the negotiations must leave nothing open for future determination. Had Bulla named an exorbitant figure for the cost of the premium, Donahue would not have been bound to pay the figure for whatever number of years Bulla decided. Neither should Donahue or Gundlach be able to unilaterally bind Bulla. *Accord Maryland Casualty Co. v. Clean-Rite Maintenance Co.* (9th Cir. 1967), 380 F.2d 166, which distinguishes *Hamacher v. Tumy* (cited by the majority) in a situation very

that Bulla never told her in so many words that "they are covered." No meeting of the minds was ever achieved between Bulla and Donahue. This is not to say that perhaps some understanding had been reached between Gundlach and Donahue.

What is really meant by the expression "he was working on it"? This expression appears to have confused the trial court. The record disclosed the following testimony of Gundlach on direct examination:

"Q. When was the first time this ever came to your attention that Mr. Bulla had not followed this up?

"A. [Gundlach] When the Donahues told me they did not have the policy yet, so I called him, he said he was working on it, so I figured--

"Q. What did that mean to you?

MR. FEAGLER [Bulla's attorney]: Again, I object on the same grounds. This is a self serving opinion.

THE COURT: Sustained.

"Q. Does that have any particular significance in the insurance trade other than--

"A. No, when I am working on something I am doing something.

MR. FEAGLER: I wish she would confine herself to the question.

"A. It means people work."

When Bulla's attorney attempted to clarify the testimony by pointing out that all Gundlach testified to was that Bulla "was working on it," the trial court replied, "That is not the way the court recalls it. . . . [O]n that particular phase of it he said there was coverage. . . ."

There may be some evidence that Gundlach was Donahue's agent, but there is no evidence that Bulla was Donahue's agent.

---

similar to the one at bar; the Federal Court held that the contract was unenforceable for lack of certainty in its terms.

Nor, did the trial court expressly find an agency relationship. Gundlach testified to the procedures that she followed when working with Bulla. She testified that she was not working for Bulla. She further testified that she was not his agent, and she could not bind him. Therefore, her actions, telling Donahue that she was covered, cannot be construed as within the scope of her authority as agent. Obviously, Donahue relied on Gundlach's assessment of her coverage. It would be incorrect to say that Gundlach has inherent agency power. *Storm v. Marsischke* (1973), 159 Ind. App. 136, 304 N.E.2d 840.

In *Hamacher v. Tumy* (1960), 222 Ore. 341, 352 P.2d 493, which is relied upon by the majority opinion as authority to support the result reached, there had been prior insurance dealings between the parties. Donahue had had no previous insurance dealings with Bulla; the first time Donahue dealt with Bulla was three days after the accident. *Burroughs v. Bunch* (1948), ____ Tex.Civ.App. ____, 210 S.W.2d 211, and *Gibbs v. Allstate Insurance Company* (1965), ____ Tex.Civ.App. ____, 386 S.W.2d 606, were cited by the majority opinion as authority for the proposition that Bulla had a duty to inform Donahues that the insurance was not going to be written. In *Burroughs*, there was a specific promise[2] to notify the insured if the policy could not be written. Gibbs simply relied on *Burroughs*. There was no specific promise made by Bulla to Gundlach or Donahue. If Mrs. Donahue was lulled into ". . . thinking that the information provided was sufficient. . .," as concluded by the majority opinion, she was lulled by Gundlach's direct representations and not by representations made by Bulla. Donahue's recovery should have been from Gundlach and not Bulla.

I would reverse and remand for a new trial.

NOTE—Reported at 366 N.E.2d 233.

---

2. The Texas Supreme Court distinguished *Burroughs* on the same ground: no specific request by the insured. *See McCall v. Marshall* (1965), ____ Tex. ____, 398 S.W.2d 106.