No *Shepard's* Signal™
As of: April 9, 2015 3:31 PM EDT

# *Smith-Reagan & Assocs. v. Fort Ringgold* Ltd.

Court of Appeals of Texas, Fourth District, San Antonio

March 11, 2015, Delivered; March 11, 2015, Filed

No. 04-13-00608-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
4/9/2015 3:16:37 PM
KEITH E. HOTTLE
Clerk

**Reporter**
2015 Tex. App. LEXIS 2291

**Prior History:** [*1] From the 381st Judicial District Court, Starr County, Texas. Trial Court No. DC-02-343. Honorable Jose Luis Garza, Judge Presiding.

**Disposition:** REVERSED AND TAKE-NOTHING JUDGMENT RENDERED.

## Core Terms

damages, appellees, hotel, business interruption, coverage, rooms, occupancy rate, expenses, procured, awarding damages, no evidence, calculation

## Case Summary

### Overview

HOLDINGS: [1]-A take-nothing judgment was rendered against appellees because appellees were required to present evidence on the amount they would have recovered from the insurance company if appellant had procured an insurance policy that provided business interruption coverage, and appellees presented no evidence of how business interruption damages would have been calculated if the policy had been obtained.

### Outcome

Judgment reversed and take-nothing judgment rendered.

## LexisNexis® Headnotes

Insurance Law > ... > Insurance Company Operations > Company Representatives > Brokers

*HN1* The measure of the liability for an agent's failure to procure insurance is the amount that would have been due under the insurance policy if it had been obtained.

Civil Procedure > Appeals > Remands

Civil Procedure > Appeals > Appellate Jurisdiction > General Overview

Civil Procedure > Judgments > Relief From Judgments > Motions for New Trials

*HN2* When the appellate court sustains a no evidence point of error after a trial on the merits, the appellate court renders judgment on that point. However, if there is some evidence of the correct measure of damages, the appellate court reverses and remands the cause for a new trial.

**Counsel:** For Appellant: Crisanta Guerra Lozano, Roerig, Oliveira & Fisher, Brownsville, TX.

For Appellee: Brendan K. McBride, The McBride Law Firm, San Antonio, TX; Matthew R. Pearson, Gravely & Pearson, L.L.P., San Antonio, TX.

**Judges:** Opinion by: Sandee Bryan Marion, Justice. Sitting: Sandee Bryan Marion, Justice, Marialyn Barnard, Justice, Luz Elena D. Chapa, Justice.

**Opinion by:** Sandee Bryan Marion

## Opinion

**MEMORANDUM OPINION**

REVERSED AND TAKE-NOTHING JUDGMENT RENDERED

In September 2001, the family-owned Fort Ringgold Motor Inn sustained extensive damage following a storm. At the time, the hotel was covered under an insurance policy issued by Highlands Insurance Company. Appellant, Smith-Reagan & Associates, Inc. d/b/a Smith-Reagan Insurance Agency, is the Highlands agent that sold the policy to Fort Ringgold.

Following the storm, the hotel submitted claims for both property damage and loss of income that resulted from the

hotel's closure of forty-three of its sixty-four rooms due to mold.[1] Although Highlands paid claims submitted by the hotel for property damage, it refused to pay any claim associated with lost income on the grounds that the policy did not include business interruption coverage. The hotel's owners, Fort Ringgold Limited; Pete Diaz, III; Aaron Diaz; [*2] and Monica Aguillon sued Smith-Reagan and others. In their suit against Smith-Reagan, appellees alleged Smith-Reagan failed to procure business interruption coverage for the hotel and misrepresented to them that the Highland policy provided such coverage.

After appellees settled with the other defendants, the case went to trial, and the jury returned a verdict against Smith-Reagan and in favor of appellees. On appeal, Smith-Reagan (1) challenges the sufficiency of the evidence in support of the jury's findings and the amount of damages awarded; (2) asserts the trial court erred by failing to apply a settlement credit; and (3) asserts the trial court erred in various evidentiary rulings. Because we believe the complaint related to the damages awarded is dispositive, we address only that issue on appeal. See *TEX. R. APP. P. 47.1*.

## DAMAGES

On appeal, Smith-Reagan asserts appellees failed to present any evidence as to the correct measure of damages for the failure to include business interruption coverage in the Highlands policy.

The jury was asked "[w]hat sum of money, if paid now in cash, would fairly and reasonably compensate [*3] Fort Ringgold for its damages, if any, that resulted from the conduct of [Smith-Reagan] . . . ." The jury was instructed to "[c]onsider the following elements of damages, if any, and none other": "The loss of business income, if any, sustained by Fort Ringgold that would not have occurred had [Smith-Reagan] procured insurance for Fort Ringgold that included coverage for business interruption." The jury awarded Fort Ringgold $325,000.00. The jury charge closely tracked case law, which provides that *HN1* "[t]he measure of the liability for [an agent's] failure to procure insurance is the amount that would have been due under the insurance policy [if] it had been obtained." *Scott v. Conner, 403 S.W.2d 453, 457 (Tex. Civ. App.—Beaumont 1966, no writ)* (plaintiff could not recover value of house at time of fire; instead, plaintiff's damages measured by amount of insurance in cancelled policy defendant was to replace); *Taylor v. Republic Grocery, 483 S.W.2d 293, 296 (Tex. Civ. App.—El Paso 1972, no writ)* (plaintiff could not recover

amount to repair building; instead, plaintiff's damages measured by amount plaintiff would have been due under policy if policy had been obtained); *accord William M. Mercer, Inc. v. Woods, 717 S.W.2d 391, 400-01 (Tex. App.—Texarkana 1986)*, aff'd in part, rev'd in part on other grounds, *769 S.W.2d 515 (Tex. 1988)*. Therefore, appellees were required to present evidence on the amount they would have recovered from Highlands if Smith-Reagan had procured [*4] an insurance policy that provided business interruption coverage.

A starting point for this calculation would have been the terms of a policy provision that provided such coverage during the relevant time period. *See Nat'l Fire Ins. Co. of Pittsburgh, Pa. v. Valero Energy Corp., 777 S.W.2d 501, 509-10 (Tex. App.—Corpus Christi 1989, writ denied)* (concluding lost profits as a result of business interruption was speculative because no evidence of business interruption damages in conformity with insurance policy provision providing for such coverage); *Gibbs v. Allstate Ins. Co., 386 S.W.2d 606, 609 (Tex. Civ. App.—Fort Worth 1965, writ ref'd n.r.e.)* (evidence sufficient to support damage award because award was within limits of policy had the policy been procured). Here, however, appellees presented no evidence of how business interruption damages would have been calculated if the policy had been obtained. Appellees did not present, as such evidence, testimony about or a copy of a policy providing business interruption coverage during the relevant time period. Such evidence would have allowed the jury to calculate the loss of business income, if any, that would have been due if Smith-Reagan had procured an insurance policy that included business interruption coverage.

Instead, at trial, appellees stated their damages amounted to $1,175,796.00. This amount was based on the number of closed rooms (forty-three) multiplied [*5] by the rate charged for those rooms multiplied by the total number of days the forty-three rooms were closed. Pete Diaz ("Pete"), one of the hotel owners, agreed this amount did not take into consideration any expenses associated with the closed rooms, and he assumed a 100% occupancy rate. Pete testified the hotel's expenses remained the same after closing the forty-three rooms because the hotel still had to pay the mortgage, taxes, and payroll. Therefore, according to appellees on appeal, the gross amount of $1,175,796.00 includes operating expenses. Pete admitted he did not know how much he would have been entitled to receive if the policy had included business interruption coverage.

Pete's brother Aaron, who managed the day-to-day operations of the hotel and was also an owner, testified the

---

[1] The hotel closed fifteen rooms in January 2002 and another twenty-eight rooms in July 2002.

occupancy rate was "about 70 percent," but he did not provide any evidence on which to base this statement. Although both Pete and Aaron testified the expenses remained the same, Aaron testified he cut employee hours, and the hotel was not earning a profit of $1 million. The only expert appellees presented on the issue of damages was the testimony of their contractor who testified about the costs [*6] to repair the hotel and who admitted his estimates had nothing to do with a loss in revenue due to business interruption.

On appeal, appellees contend the jury could have relied on the occupancy rate provided by Smith-Reagan's expert and simply multiplied their estimate of lost gross revenue by that rate. Smith-Reagan's expert testified the occupancy rate from January 1, 2001 through July 31, 2001, was fifty-seven percent based on his review of the hotel's Manager's Daily Reports, which showed the occupancy rate for each day of the month. Even assuming the contract formula for calculating business interruption damages was unnecessary, we do not agree with appellees' argument because this contention assumes the policy would have paid gross revenues without regard to a decrease in expenses due to the closure of forty-two of the hotel's sixty-four rooms.

We conclude Pete's estimate of lost gross revenue and a 100% occupancy rate was speculative, as was Aaron's estimate of a seventy percent occupancy rate. Although both testified the expenses remained the same, neither provided the amounts of those expenses, and Aaron testified he reduced employee hours. Moreover, neither tied their calculation [*7] of lost revenue to any amount that would have been due under a policy that provided business interruption coverage. On this record, we conclude the evidence is legally insufficient to support the jury's award of damages for lost business income.

Generally, **HN2** "when we sustain a no evidence point of error after a trial on the merits, we render judgment on that point." *Texarkana Mem'l Hosp., Inc. v. Murdock, 946 S.W.2d 836, 841 (Tex. 1997)* (citing *Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 86 (Tex. 1992))*. However, if there is "some evidence of the correct measure of damages," we reverse and remand the cause for a new trial. *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc., 960 S.W.2d 41, 51 (Tex. 1998)* (holding that appellate court can remand for new trial when no evidence supports damages awarded but there is evidence of some damages); *see Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 682 (Tex. 2000)* (holding remand for new trial is appropriate remedy where there is evidence of some damages but there is no evidence to support full amount of damages found by the jury). Here, the only evidence adduced by appellees was speculative; therefore, we cannot say some evidence exists to warrant a remand for a new trial on damages. Accordingly, we must render a take-nothing judgment against appellees.

## CONCLUSION

Appellees' evidence was legally insufficient to support the damage award. Because Smith-Reagan's challenge to the legal sufficiency of the damage award [*8] is dispositive, we do not reach the remainder of the issues. We reverse the trial court's judgment and render judgment that appellees take nothing.

Sandee Bryan Marion, Justice